ELIZABETH MOORE, by her next friend PATRICK MOORE *vs.* JOHN MCDONALD, and others, by their guardian and next friend, SAMUEL B. FAUTH, and others.

*Caveat to Will—Right of Suitor to have Written instruments in Evidence taken to the Jury room by the Jury on Retiring—Prayers and Instructions—Hypothetical Statement of Facts in Instruction—Province of the Court—Practice in Court of Appeals—Declarations of Testator made shortly before his Death—Exceptions to admissibility of Evidence—Undue influence—Province of Court and Jury—Weight of Evidence—Legal Sufficiency of Evidence.*

The parties litigant have the right during the progress of the trial, in the presence of the Court and of the opposite party, to submit to the closest scrutiny of every individual juror, if the suitor so desires, any and every instrument of writing that may have been admitted in evidence in the case. But this right ends with the trial in the Court room, and does not extend to having the instrument placed in the hands of the jury on their retiring to the jury room to make up their verdict.

A will offered in evidence during the progress of a case does not in many respects differ from other documentary evidence; and by consent of both parties the Court may allow any such instrument of writing to be taken by the jury to their room.

A prayer on the part of the caveators to a will instructed the jury, that if they found that the caveatee or her mother, for the purpose of influencing the testator in making his will, raised prejudices in the mind of the testator against those who would otherwise have been the natural objects of his bounty, and continually kept him from intercourse with such persons, to the end that those prejudices or impressions which he, she or they knew he had thus formed to the disadvantage of such relatives (if the jury so believe,) might not be removed, then the jury are entitled to consider these facts, in connection with other facts in the case, in deciding the question of undue influence. On appeal it was HELD:

1st. That if the hypothetical facts stated in this instruction were found by the jury to exist, they were proper to be considered by the jury, in connection with other facts, in determining their verdict on the issue of undue influence. But the practice of granting prayers of this description was improper.

2nd. That it is not the proper office of the Court to call the attention of the jury to this or that fact, and inform them that they may take it into consideration in making up their verdict, as such instructions, coming from the Court, are apt to give undue weight and prominence to the fact thus called to their attention, and it is a practice liable to abuse, and to mislead.

3rd. That while the prayer should not have been granted, the error was not sufficient to authorize a reversal of the judgment, as any injury the caveatee might have sustained by this prayer standing alone, was prevented by the granting of her prayers.

The exact language of this Court used in an opinion in one case and incorporated in an instruction in another case, does not necessarily make that instruction correct.

The declarations of a testator made shortly before his death, cannot be regarded by the jury as invalidating his will, if they find that at the time of its execution the testator was of sound mind and not unduly influenced.

Where a prayer of the caveatee asking that the jury be instructed that there was no legally sufficient evidence before them of the mental incapacity of the testator at the time of the execution of the will, and therefore their verdict must be for the caveatee on the third issue, was rejected by the Court below, but the jury nevertheless found for the caveatee on that issue, this Court will not undertake to decide whether said prayer should or should not have been rejected.

Where exceptions are taken to the admissibility of testimony in mass, and some of it is admissible, the Court will not reject it.

The caveators offered to prove that the testator twelve years before the execution of his will promised his daughter Sarah, then on her death bed, that he would take care of and provide for her three children; that this promise was made with much solemnity but was never performed by the testator. And the caveators gave evidence tending to prove that the caveatee prevented the testator from taking said children home and supporting them. On objection to this evidence it was HELD:

That the caveators might, if they could, show that the good feelings towards his daughter, manifested by the testator's declarations, was interrupted by the caveatee or others, for their own purposes, and that this interruption continued from the time of the exhibition of the good feeling (twelve years before) down to the making of the will.

The declarations of a testator made before the execution of his will, may be given in evidence by either the caveator or caveatee; by the former in order to show that the will is not in accordance with his expressed wishes, and by the latter to show that it is.

Undue influence is generally proved by a number of facts, each one of which standing alone may be of little weight, but taken collectively may satisfy a rational mind of its existence.

If the facts proved are such that a rational mind might in reason and fairness draw from them the conclusion sought, it is the duty of the Court to submit the case to the jury. It is their province to decide questions of fact, and as the existence of undue influence at the time of the execution of a will is a question of fact, if the Court conclude that from all the caveators' evidence in the case, a rational mind might in reason and fairness draw the conclusion that undue influence did exist at the time the will was executed, a verdict for the caveators on such issue will not be disturbed.

The weight of evidence is one thing, and its legal sufficiency is a different matter.

In cases involving the legal sufficiency of evidence, this Court will content itself in the main with announcing its conclusion, without a recapitulation of the evidence.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*First, second, third* and *fourth Exceptions,* sufficiently stated in the opinion of the Court.

*Fifth Exception.*—The testimony being closed on both sides, the plaintiffs offered the two following prayers:

1. That no will is valid in Maryland, unless the person making the same be, at the time of executing or acknowledging it, of sound and disposing mind and capable of executing a valid deed or contract; and if the jury find from the

evidence that the said Lawrence McDonald, at the time of executing the will offered in evidence, was not of sound and disposing mind, and capable of executing a valid deed or contract, then their verdict should be for the plaintiffs on the third issue. That the meaning of the words "sound and disposing mind, and capable of making a valid deed or contract," in respect to the disposition of his property by last will and testament, is that he must have fully understood the nature of the business in which he was engaged, and have had sufficient capacity at the time of executing the said will to make a disposition of his estate, with judgment and understanding, in reference to the amount and situation of his property and the relative claims of the different persons who should have been the objects of his bounty, and that while the meaning of the words judgment and understanding is not that the jury should reject the said will, because they may believe that it is in its provisions unjust and injudicious, yet the provisions of the said will may be considered by them in deciding the question as to the capacity or incapacity of the said Lawrence McDonald at the time of executing the same.

2. That if the jury believe from the evidence that Mrs. Lizzie Moore, or Mrs. Sarah McDonald, the wife of the testator, for the purpose of influencing the testator, Lawrence McDonald, in making his will, raised prejudices in his mind against those who would otherwise have been the natural objects of his bounty, and by contrivance kept him from intercourse with such persons, to the end that those prejudices or impressions, which she or they knew he had thus formed, to the disadvantage of such relatives, (if the jury so believe,) might be removed; then the jury are entitled to consider these facts, in connection with other facts in the case in deciding the fifth issue.

The defendant offered the thirteen prayers as follows, the fourth prayer being withdrawn:

1. A person capable of executing a valid deed or contract has the legal capacity to execute and acknowledge a

will or codicil. The law presumes every one to be sane until the contrary be proved. Every person is presumed to be of sound mind and memory and of full testamentary capacity unless the contrary be proved. Therefore the burden of proof lies upon the plaintiffs to establish any unsoundness of mind. Neither age, nor sickness, nor nervousness, nor extreme distress, nor debility of body will disqualify a person from making a will if sufficient intelligence remain. It is not sufficient to avoid the will in this case, that its dispositions may be imprudent or unaccountable, (if the jury shall so find,) and it is no valid objection to this will that the testator gave the greater portion of his property to his wife for life, with full powers of disposition over the same, and after her death to the defendant, Mrs. Moore, alone, to the exclusion of his other next of kin; provided he was mentally competent, and was free from undue influence at the time of the execution thereof. If, therefore, the jury find that the testator was mentally competent, as above explained, and free from undue influence as explained in defendant's eleventh prayer, at the time of the making of the will offered in evidence, and that its contents were made known to him at that time, and that he understood them, they cannot reject the will merely because in their opinion its provisions are unjust or injudicious; but they must find for the defendant on all the issues.

2. The jury must not find their verdict from any suspicion or presumption, and while any fact, no matter how slight, bearing at all upon the issues in this case, and not wholly irrelevant, may be considered as evidence, yet, unless the facts and circumstances of this case given in evidence, when combined and considered by the jury as a whole, shall satisfy them of the existence of the fact they are offered to establish, the jury must find that issue for the defendant.

3. That the evidence given in the case as to what the testator, Lawrence McDonald, said were his wishes shortly

before his death, cannot in any manner be regarded by the jury for the purpose of invalidating his will given in evidence, if the jury find that at the time when he executed it he was of sound mind, and that he was not unduly influenced in regard to its execution; and that his said will could not be set aside or changed in any manner by word of mouth only.

5. That if the jury find that the testator gave instructions for his will to the witness, Hinkley, who drew it according to those instructions, and read it over to the testator, and that the testator understood it, and approved it as it had been drawn up, then the verdict must be for the defendant on the fourth issue in this case.

6. That if the contents of the will in question were read to and approved by the testator before the same was executed, and were known to him when he executed it in the manner given in evidence, it is quite immaterial to inquire whether it had been drawn by the witness Hinkley in all respects, according to instructions before given to him by the testator.

7. If the jury shall find that any part or clause of the will in question, was first suggested to the testator by another person, and then adopted by him, such adoption is *prima facie* his own voluntary will and act, and ought not to be found by the jury to be the result of his incapacity or weakness of mind, nor of undue influence; unless they further find that there was such incapacity or weakness of mind, or undue influence over and beyond the fact of such suggestion by another, and adoption by the testator.

8. That there is no sufficient legal evidence of any undue influence exercised by Sarah McDonald, the wife of the testator, upon him, to enable the jury to find for the plaintiffs on the fifth issue, on account of any undue influence exercised by her in the making of the will offered in evidence.

9. That there is no sufficient legal evidence of any undue influence exercised by the defendant, Mrs. Elizabeth Moore, upon the testator, to enable the jury to find for the plaintiffs on the fifth issue, on account of any undue influence exercised by her in the making of the will offered in evidence.

10. That in order to invalidate the will of Lawrence McDonald, offered in evidence, upon the ground of undue influence used in its execution, it is necessary for the plaintiffs to show to the satisfaction of the jury that such influence was exercised to such a degree as to deprive the testator of his free agency at the time he executed the said will. The burden of proof is upon the plaintiffs; and unless the jury find that the plaintiffs have so shown, their verdict must be upon the fifth issue for the defendant.

11. That in order to invalidate the will in evidence in this case, on the ground of undue influence, it is necessary for the plaintiffs to show that said will was induced by undue influence operating upon and controlling the testator at the time it was executed, to such an extent and degree that he was at that time too weak to resist it; and while it is not necessary that such undue influence should have been immediately and directly exerted at the particular time at which the will was made, nor material by whom it was practiced, yet it is necessary to show that he executed the said will in obedience to some control which had deprived him of his free agency, and so subordinated his will to that of another, as to make the testamentary act not the will of the testator, but that of the person or persons so controlling him, contrary to his own free and unconstrained will, and unless the jury so find, they must find on the fifth issue for the defendant.

12. That if the only influence possessed or exercised by his late wife over the testator, Lawrence McDonald, her husband, was that of a kind and affectionate wife, gained by her virtues, affection and kindly offices and attentions

during a long married life ; then the existence of such in-
fluence so possessed, acquired and exercised, is of itself no
ground for setting aside the will offered in evidence ; that
if his said wife had any influence over him, such influence,
in order to vitiate the will offered in evidence, must be
proven to the satisfaction of the jury to have been an un-
lawful influence, and exercised to such a degree as to amount.
to force and coercion, destroying his free agency in respect.
to the making of that will. But the influence of that.
affection and attachment which he may have had for her,
and his mere desire to gratify her wishes, would, on the
contrary, be a very strong ground in favor of sustaining
the said will. Therefore, unless there be satisfactory
proof that the will in evidence was obtained by force or
coercion, or by importunities which he could not resist,
amounting to force or fear, practiced upon the testator by
his said wife, the jury must find for the defendant upon the
fifth issue ; unless they further find that the said will was.
obtained by force or coercion, or importunities amounting
to force or fear, practiced upon him by some other person
or persons not his said wife.

13. That even if the jury find that the testator, Law-
rence McDonald, had a daughter, who died in the year
1874, and that her husband had died before her, and that.
they left three children, all minors, who are grandchildren
of the testator, and that they were, at the time of his exe-
cuting the will in evidence, in needy circumstances, and
that they still are so ; and further find that the testator
made to his daughter, the said Sarah, at the time of her
death, the promises which have been given in evidence,
yet their verdict must be for the defendant on the fifth
issue, unless they find from other evidence in the case
that at or before the execution of his said will, he was.
unduly influenced in regard to the execution thereof; and
that any promises that the jury may find he may have
made to said Sarah some years before the execution of the

will which has been given in evidence, cannot be considered as in any manner binding in the law, and must be wholly disregarded by the jury, if they find that the testator at the time he executed the will, which has been given in evidence, was of sound mind, and acted of his own free will and determination, and not under any undue influence.

14. That there is no sufficient legal evidence in this case to enable the jury to find for the plaintiffs on the third issue on account of any unsoundness of mind sufficient to incapacitate the testator from executing a valid will at the time of the execution of the will offered in evidence.

The Court, (BROWN, C. J.,) granted the prayers of the plaintiffs, and the first, fifth, sixth and seventh of the defendant, and rejected her second, third, eighth, ninth and fourteenth prayers. The plaintiffs conceded to the defendant the first and second issues, as also her tenth, eleventh, twelfth and thirteenth prayers. The fourth prayer was withdrawn. The Court also gave an instruction of its own, as follows, which was conceded:

The Court instructs the jury, that if they find that when said paper-writing, mentioned in the fourth issue, was executed, said Lawrence McDonald did not know and understand its contents, then their verdict must be for the plaintiffs on the said issue, but if they find that when said paper-writing was executed, said Lawrence McDonald did know and understand its contents, then their verdict must be for the defendant on the said issue. The defendant excepted.

*Sixth Exception.*—Stated in the opinion of the Court.

The jury rendered their verdict for the defendant on the first, second, third, and fourth issues, and for the plaintiffs on the fifth issue. The defendant appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, BRYAN, and McSHERRY, J.

*Frederick W. Story,* and *Edward Otis Hinkley,* for the appellant.

The defendant had a right to have the jury warned against finding their verdict upon "suspicion or presumption." She had also the right to an instruction in a case of this kind, that "unless the facts and circumstances of the case given in evidence when *combined* and considered by the jury *as a whole,* shall satisfy them of the existence of the fact they are offered to establish, they must find that issue for the defendant." Such an instruction was but common justice—especially as to the issue of undue influence—since undue influence is "fraud upon testator," and *quasi criminal* in its nature, raising *prima facie a presumption of innocence. Sewell vs. Slingluff,* 57 *Md.,* 537.

As to the right of the jury to have the original will, in view of the several decisions of this Court, touching that point, it would seem to be manifestly an error. *Brooke vs. Townshend,* 7 *Gill,* 10; *Yingling vs. Hesson,* 16 *Md.,* 120 ; *Code, Art.* 93, *sec.* 325, 1798, *ch.* 101, *sub-ch.* 2, *sec.* 4; *Beatty vs. Mason,* 30 *Md.,* 409.

It was never proved in the Orphans' Court. A copy thereof could not be certified to by the register, as of record in his Court. The copy could not be used. The very question in issue was whether the original paper was a will or not.

*Charles W. Heuisler,* and *W. Hollingsworth Whyte,* for the appellees.

The American cases, as well as the English, allow a very extensive range of testimony in support of, and in reply to, evidence tending to show undue influence and weakness of mind, as the moving and proximate causes of the will; and in all such testimony the object of the law is to enable the jury to know all that the witness knows, which is pertinent to the issue, and every rule of evidence is designed to

secure this end. *Schouler on Wills*, secs. 240, *et seq.*; 1
*Redfield on Wills*, 4th ed., p. 537, sec. 51; *Beaubien vs.
Cicotte*, 12 *Mich.*, 459; *Glover vs. Hayden*, 4 *Cush.*, 584;
*Davis vs. Calvert*, 5 *Gill & John.*, 269; *Clark vs. Stansbury*,
49 *Md.*, 346; *Crocker vs. Chase*, 57 *Vermont*, 413; *Denison's Appeal*, 29 *Conn.*, 399; *Robinson vs. Adams*, 62 *Maine*,
397; *McDaniel vs. Crosby*, 19 *Ark.*, 533.

If any portion of the testimony is admissible, the appellant loses the advantage of her exception. *Pegg vs. Warford*, 7 *Md.*, 582; *Colvin vs. Warford*, 20 *Md.*, 357.

An instruction covered by previous instructions is
properly refused, and it is submitted that a judgment will
not be reversed where it appears from the record that the
appellant has not been injured by the rulings of the Court
below, although such rulings may be erroneous. *Higgins
vs. Carlton*, 28 *Md.*, 115; *Mason vs. Poulson*, 43 *Md.*, 161.

The question of undue influence *vel non*, is a question of
fact for the jury, and while it is the duty of the Court to
give instructions on the points of law and to explain and
illustrate them, it will not, unless possibly in some cases
where there is no real question of fact to be determined,
undertake to direct the jury what their finding shall be.

Unless it appears that the evidence is of such a character
that no rational mind could infer the fact sought to be
established, the Court cannot instruct the jury that there
is no evidence before them legally sufficient to warrant
their finding the fact so attempted to be proved. *Tyson
vs. Tyson*, 37 *Md.*, 567; *McDaniel vs. Crosby*, 19 *Ark.*, 533;
*Robinson vs. Adams*, 62 *Maine*, 402; *Davis vs. Calvert*, 5
*Gill & John.*, 269; *Higgins vs. Carlton*, 28 *Md.*, 125; *Wittman vs. Goodhand*, 26 *Md.*, 95, 105; *Layman vs. Conrey*,
60 *Md.*, 286, 293.

There was no error in the rejection of the defendant's
fourteenth prayer. *Davis vs. Calvert*, 5 *Gill & John.*,
269; *McDaniel vs. Crosby*, 19 *Arkansas*, 533; *Robinson
vs. Adams*, 62 *Maine*, 402; *Tyson vs. Tyson*, 37 *Md.*, 567.

---

Moore *vs.* McDonald, *et al.*

---

After the close of the testimony in the case, and the judgment of the Court on the prayers offered, the defendant, by her counsel, asked the Court to allow the jury to have the *original will of Lawrence McDonald,* but the Register of Wills of Baltimore City refused to part with the custody of the same, and the Court refused the request, but gave them *a certified copy thereof* instead, and it is the ruling of the Court in this respect that forms the subject of the sixth bill of exception.

There was no error in such ruling.

The Court had no power to compel the delivery, to any one, of an original will, duly proven, by the Register of Wills; he, the Register, is charged by law in heavy penalties, with the exclusive care and custody of such documents. *Code of Pub. Gen. Laws, Art. 93, sec. 328.*

To compel him to do an act, which in the event of mischance would subject him and his bond to serious legal consequences, is an improper and mischievous proceeding, and very properly did not receive the sanction of the Court.

STONE, J., delivered the opinion of the Court.

Upon a caveat to the will of Lawrence McDonald, filed by the appellees, issues were framed by the Orphans' Court of Baltimore City, and sent to the Court of Common Pleas for trial.

The first and second of these issues presented the question of the proper execution by the testator, and the legal attestation of the will.

The third, the testamentary capacity of the testator, and the fourth, his knowledge of the contents of the will, and the fifth and last issue the question of undue influence.

The jury found a verdict in favor of the caveatee, the appellant here, upon all the issues except the fifth and last, and upon that issue they found for the caveators, the appellees here, and the caveatee has brought the case here.

The case is brought here upon exceptions to some· of the prayers granted or refused, to the admissibility of certain evidence, but principally, if we can judge from the argument of the appellant, upon the question of the legal sufficiency of the evidence to establish the fact of undue influence.

By the sixth and last exception, which we will first notice, it appears that, "after the close of the case, and the judgment of the Court upon the prayers, as set forth in the defendant's fifth bill of exceptions, the defendant, by her counsel, offered to the Court to allow the jury to have the original will in suit and in evidence ; but the Register of Wills of Baltimore City refused to part with the same, and the Court declined the offer, and refused to allow the jury to have said original will, but gave them a certified copy thereof instead," and the defendant excepted.

From this exception it will be seen that the defendant claimed, as a matter of legal right, the privilege of sending into the jury room, by the jury themselves, a paper that had been used as evidence in the case.  This would be opposed to the whole theory and practice of our trial by jury.  The parties litigant have the clearest right, during the progress of the trial, in the presence of the Court and of the opposite party, to submit to the closest scrutiny of every individual juror, if the suitor so desires, any and every instrument of writing that may have been admitted in evidence in the case.  But his right ends with the trial in the Court room.  He has no more right to send by the hands of the jurors themselves into the jury room, a piece of documentary evidence, which he believed important to his case, than he would a living witness.

It is not necessary for us to notice the fact set forth in the bill of exception, that the Register of Wills refused to part with the original will, or to enquire whether the Court below was influenced by that refusal to deny the request of the appellant.  It is enough for us to say that

the Court was right in refusing to allow the will to go to the jury room. Had it appeared *affirmatively* from the bill of exception that both, the caveators and caveatee, had *consented* that the jury might take the original will, then the action of the Register of Wills would have been a proper subject for our consideration. But we are dealing with a claim *of right* on the part of the appellant, without the consent of the appellees. A will offered in evidence during the progress of a case, does not differ in many respects from other documentary evidence. By consent of both parties, the Court may allow any such instrument of writing to be taken by the jury to their room. But not as a matter of right. The ruling of the Court on that exception is therefore affirmed.

The fifth exception contains the caveatee's, the appellant here, objections to the granting of the first and second prayers of the caveators, and the refusal of the Court to grant the second, third, eighth, ninth and fourteenth prayers of the caveatee.

The first prayer of the caveators which was granted, relates wholly to the question of the testamentary capacity of the testator, which was raised by the third issue. As that issue was found for the appellant, and she was not therefore prejudiced by said prayer, and as no new trial will be awarded, we think it unnecessary to notice that prayer.

This prayer is however sanctioned by *Higgins vs. Carlton,* 28 *Md.,* 115, and affirmed by this Court.

By the second prayer of the caveators, the Court instructed the jury that if they found that the caveatee, or her mother Mrs. McDonald, for the purpose of influencing the testator in making his will, raised prejudices in the mind of the testator against those who would otherwise have been the natural objects of his bounty, and by contrivance kept him from intercourse with such persons, to the end that those prejudices or impressions which she,

or they knew he had thus formed to the disadvantage of such relatives, (if the jury so believe,) might not be removed, then the jury are entitled to consider these facts, in connection with other facts in the case, in deciding the issue of undue influence.

This hypothetical manner of presenting facts to the jury has no doubt been sanctioned by this Court in *Colvin vs. Warford,* 20 *Md.,* 357. The Court say in that case that the obvious purpose of those prayers was to remove from the minds of the jury all doubt as to the propriety of considering the facts thus presented in the proposed connection.

In effect they simply enunciate the proposition that certain facts which the jury might otherwise have disregarded, constituted evidence, and if there was no error in thus declaring these facts to be evidence, the party was entitled to the instruction.

In *Layman vs. Conrey,* 60 *Md.,* 286, this identical prayer was granted by the lower Court, but the question was not passed upon by this Court.

Now if the hypothetical facts stated in this instruction were found by the jury to exist, they were certainly proper to be considered by the jury, in connection with other facts, in determining their verdict on the issue of undue influence.

But we cannot approve the practice of granting prayers of this description. When the evidence has been admitted the fact of its admission gives the jury the right to consider every fact in the case that is proven to their satisfaction. It is not the proper office of the Court to call the attention of the jury to this or that fact, and inform them that they may take it into consideration in making up their verdict. Such instructions coming from the Court, are apt to give undue weight and prominence to the fact thus called to their attention. It is a practice liable to abuse, and to mislead.

But while we think the prayer should not have been granted, we do not think the error sufficient to authorize

a reversal of this judgment. By a reference to the tenth, eleventh, twelfth and thirteenth prayers which were all conceded, the jury were fully instructed, as to the law relating to undue influence, and of what they must be satisfied before they could find a verdict for the caveators on that issue. By these instructions the caveatee obtained as full and favorable a statement of the law, applicable to the facts of her case, as she was entitled to. Any injury she might have sustained by this prayer standing alone, we think was prevented by the granting of her prayers. Under such circumstances we do not feel authorized on account of this prayer to send the case back for a new trial.

The second prayer of the caveatee was properly refused. It announced a mere abstract legal proposition, and might with equal propriety have been granted in any case where the evidence was circumstantial, as the case at bar. A part of this instruction is taken from the *opinion* of this Court in *Davis vs. Calvert*, 5 *Gill & John.*, 269. But we have said in more than one case, that the exact language of this Court used in an opinion in one case, and incorporated in an instruction in another case, does not necessarily make that instruction correct.

The caveatee's third prayer asked the Court to instruct the jury that what the testator said shortly before his death were his wishes, could not be regarded by the jury as invalidating his will, if the jury found that at the time of its execution the testator was of sound mind, and not unduly influenced, and that his said will could not be changed or set aside by word of mouth only.

This prayer announced the legal proposition that the declarations of the testator did not revoke his will, and that a will once duly made by a competent testator, could not be revoked by parol. Of the correctness of this as a legal proposition there can be no doubt. But there was no issue made in the case of the revocation of the will, and the law so asserted was not applicable to the issues then

being tried, but was irrelevant and immaterial thereto, and therefore properly rejected.

The caveatee's fourteenth prayer asked the Court to say to the jury, that there was no *legally sufficient* evidence before them of the mental incapacity of the testator at the time of the execution of the will, and that therefore their verdict must be for the caveatee on the third issue. This prayer the Court rejected. But the verdict was for the caveatee on that issue, notwithstanding the rejection of the prayer, and the caveatee lost nothing by its rejection. In view of the affirmance of this verdict, we think it entirely unnecessary to decide whether this prayer should, or should not have been rejected.

Before we decide upon the caveatee's eighth and ninth prayers we will examine the caveatee's exceptions to the testimony, as the eighth and ninth prayers of the caveatee depend, measurably at least, upon whether the Court were right in admitting the evidence she sought to exclude.

These exceptions are four in number, and the evidence was offered generally, and was not confined to any one of the issues, and the exceptions are also general, and do not point out the issues to which the evidence objected to was supposed to be inapplicable. It was objected to for any purpose, and if it, or any of it was admissible upon any issue, then the Court was right in allowing it to go to the jury.

The rule is most emphatically laid down in *Budd vs. Brooke, et al.*, 3 *Gill*, 198, that where exceptions are taken to the admission of testimony in mass, and some of it is admissible, the Court will not reject it. Some of the exceptions are open to this objection. But the fourth exception presents the question which seems to be the ground of all the exceptions, and in deciding that we virtually decide them all.

The caveators in these exceptions offered to prove that the testator in the year 1874 promised his daughter Sarah,

then on her death bed, that he would take care of, and provide for her three children. That this promise was made with much solemnity, but never performed by the testator. The caveators gave evidence tending to prove that the caveatee prevented the testator from taking them home or supporting them.

It has been argued that this promise to Sarah having been made really twelve years before the execution of the will, could shed no light on the condition of the testator at the time of its execution. That if he then did intend to support these children, he may have changed his mind, and that even if his wife or the caveatee did object, it was merely a family dispute, &c.

In *Griffith vs. Diffenderffer*, 50 *Md.*, 466, this Court said that the declarations of the testatrix, as to her testamentary intentions made some months *before the execution of the will*, were admissible. That such evidence might be offered either to rebut the charge of fraud and undue influence, by showing that the will was consistent with the long cherished wishes of the testator, or that it was contrary to well settled convictions of what he thought was a just and proper disposition of his property.

It is very clear from this, that the declarations of a testator made *before the execution of his will*, may be given in evidence by either the caveator or caveatee; by the former in order to show that the will is not in accordance with his expressed wishes, and by the latter to show that it is.

So in *Davis vs. Calvert*, 5 *Gill & J.*, 269, the Court says that the incapacity of the testator may be established by the proof of the *conversations* or actions, or declarations of the testator, or all of them taken together; also the contents of the will, the manner of its execution, the nature and extent of the property of the testator; his family and connections; their condition and relative situation to him; *the terms upon which he stood with them;* and

the claims of particular individuals, are all proper to be shown to the jury upon the question of incapacity.

Now these declarations of the testator made to his own daughter, and in reference to his grandchildren, certainly showed the terms upon which he then stood to them, and that these terms were friendly. Such declarations and expressions if made a short time before the execution of the will, would undoubtedly have been admissible.

But there has not been, and cannot be, any precise time before the execution of the will to which such declarations can be limited. If the testator changed his mind from other causes than mental incapacity or undue influence, it could be shown by the caveatee; if from incapacity or undue influence, it is on the caveator to show it.

In *Davis vs. Calvert* an inquiry as to the paternity of children was allowed to be gone into, and which inquiry covered a period of fifteen years, and we can see no good reason why the terms upon which the testator stood towards his daughter Sarah, and her children, may not be shown for a period of twelve years before the execution of the will. Such evidence is only admissible to show the terms upon which he, the testator, then stood with them. The caveatee was right in his contention, and as the Court told the jury in the caveatee's thirteenth granted prayer, that the promises made to Sarah were not binding on the testator, and must be wholly disregarded by the jury if they found that at the time of the execution of the will the testator was of sound and disposing mind, and not unduly influenced in making it.

Undue influence is generally proved by a number of facts, each one of which standing alone may be of little weight, but taken collectively may satisfy a rational mind of its existence.

" Where" says the Court in *Davis vs. Calvert,* "the matter in issue depends upon a variety of facts and circumstances, to be proved in different ways, and by different

witnesses, the whole of which cannot always be presented to the Court at one view, the relevancy of any one of which standing alone as a mere isolated fact, may not clearly appear, and could only be shown by a disclosure of the whole in proof; and yet the rejection of it, have the effect to destroy the force of all the rest, when the whole taken together would be conclusive of the question. And when it does not clearly appear *a priori*, that a fact offered to be proved, is collateral and irrelevant, there is generally less mischief to be done or apprehended by admitting it, though it should afterwards turn out to be merely collateral, than by the rejection." Applying these principles to the case before us, it is very apparent that the caveators might if they could, show that the good feeling towards his daughter manifested by his declarations, was interrupted by the caveatee, or others for their own purposes, and that this interruption continued from the time of the exhibition of the good feeling, (twelve years before) down to the making of the will.

The last and most difficult question in this case is the one raised by the eighth and ninth prayers of the caveatee, upon the legal sufficiency of the evidence to support the issue of undue influence.

It has been said in more than one case by this Court, that if the facts proved are such that a rational mind might, in reason and fairness, from them draw the conclusion sought, it is the duty of the Court to submit the case to the jury. It is the undoubted province of the jury to decide questions of fact, and as the existence of undue influence at the time of the execution of the will, is a question of fact, if we conclude that from all the caveators' evidence in the case a rational mind might in reason and fairness draw the conclusion that undue influence did exist at the time this will was executed, then this verdict must stand.

The great difficulty the Court has in questions of this sort, is to discriminate between the opinion of the Court

Moore *vs.* McDonald, *et al.*

upon the matter in issue, and the legal sufficiency of the evidence. The Court may think the jury erred in their finding, but may still think a rational mind in reason and fairness, might have come to the conclusion that the jury did.

Another principle we must keep constantly in view, and that is, we must take the plaintiff's evidence and assume its absolute verity. However great may be the *preponderance* of the testimony of the defendant, we must leave that to be weighed by the jury. The weight of evidence is one thing, and its *legal sufficiency* a different matter.

In *Stirliny vs. Stirling*, 64 *Md.*, 138, we said that in cases involving the legal sufficiency of evidence, in the main, the Court would content itself with announcing its conclusion, without a recapitulation of the evidence.

We see no good reason to depart from that rule in this case. No two cases are precisely alike, and we can see no good purpose to be accomplished in detailing the whole of the plaintiff's proof. It is enough to say that upon the examination of the caveators' evidence alone, and assuming its verity, we think there is enough in it to justify the Court in submitting the question of undue influence to a jury, and the rulings must be affirmed and the cause remanded.

*Rulings affirmed, and*
*cause remanded.*