JAMES G. LAYMAN *vs.* JOHN CONREY, Executor of FIRMAN LAYMAN.

*Admissibility of Evidence upon the trial of Issues framed upon a Caveat to a Will—Undue influence.*

On the trial of issues framed upon a caveat to a will, where the question of undue influence was involved, the caveator offered to prove by a witness that Mrs. P., who was the daughter of a legatee, and the wife of one of the attesting witnesses, had told the proposed witness the contents of the will, shortly before the testator died. On objection it was HELD :

That the testimony was inadmissible, the same not being accompanied with an offer to show that Mrs. P. had acquired knowledge of the contents of the will in any improper manner, or under such circumstances as would make the knowledge tend to sustain the affirmative of the issue relating to undue influence.

A witness for the caveatee testified that he was very intimate with the testator, and on the friendliest terms up to the last.　HELD :

That the credibility of the witness could not be impeached by proof, that the testator had, to others and out of his presence manifested by language, no matter how violent, unfriendly feelings, without proof that the witness had known or heard of it.

The influence which will avoid a will must be exerted to such a degree as to amount to force or coercion in destroying free agency; it must not be the influence of affection or attachment, nor the mere desire of gratifying the wishes of another, for that would be a very strong ground in favor of a testamentary act, and there must be satisfactory proof that the will was obtained by his coercion or by importunities which could not be resisted, so that the motive was tantamount to force or fear.

APPEAL from the Circuit Court of Cecil County.

The case is stated in the opinion of the Court.

*First* and *Second Exceptions.*—Stated in the opinion of the Court.

*Third Exception.*—At the close of the evidence the caveatee offered the six following prayers:

1. That if upon the whole evidence the jury find that Firman Layman executed the will offered in evidence by the caveatee, in the presence of three credible witnesses, who, at his request, and in his presence, subscribed their names as witnesses thereto, and that at the time of the execution thereof, he was capable of making a valid deed or contract, and that the same was not procured by the undue influence of any one over said Firman Layman, but was his free and voluntary act, then they must find for the caveatee.

2. That the presumption of law is in favor of the sanity of the testator, and of his capacity to make a will, and the burden of proof is on the caveator to establish a want of testamentary capacity, in order to justify the jury in setting aside the will on that ground.

3. That the law concedes to a person of sound mind the right to dispose of his property by will in any manner he may deem proper, consistent with its policy, and it is no valid objection to a will, that it prefers one child over another, or even gives the property to strangers to his blood; provided, the testator was mentally competent, and at the time free from the operation of undue influence.

4. That the burden of proof is on the caveator in this case, to satisfy the jury that the will offered in evidence, was induced by undue influence, and that unless the jury shall be so satisfied, their verdict must be for the defendant on the third issue.

5. That the influence which will avoid the will offered in evidence in this case, must be exerted to such a degree as to amount to force or coercion destroying free agency; it must not be the influence of affection or attachment, nor the mere desire of gratifying the wishes of another, for

that would be a very strong ground in favor of a testamentary act, and there must be satisfactory proof that the will was obtained by this coercion, or by importunities which could not be resisted, so that the motive was tantamount to force or fear.

6. Should the jury find the due execution by Firman Layman, of the paper described in the issues in this cause, and further find, that the said Firman Layman was of sound mind and capable of executing a valid deed or contract at the execution of such paper-writing; that then in order to set aside said paper-writing upon the ground of undue influence, the jury must be satisfied from all the evidence in the case, not only that such influence existed, but that it was exerted for the purpose of procuring the execution of said paper-writing, and that the same was obtained by means of the undue influences so exerted.

And the caveator offered the two prayers following:

1. If the jury believe, that Mrs. Ross, or any other person or persons, for the purpose of influencing the testator in making his will, raised prejudices in the mind of Firman Layman, against those who would otherwise have been the natural objects of his bounty, and by contrivance kept him from intercourse with such persons, to the end, that those prejudices or impressions, which she or they knew he had thus formed, to the disadvantage of such relatives, (if the jury so believe,) might be removed, then the jury are entitled to consider these facts, in connection with other facts in the case, in deciding the third issue.

2. That while it is true that the undue influence to avoid a will, must be exercised, in relation to the will itself, still if the jury believe that at or near the time when the will, sought to be impeached in this case, was executed, Firman Layman was in other important transactions, so under the influence of Mrs. Ross, or other

Layman *vs.* Conrey, Ex'r.

person or persons, benefited by the will, that as to them, he was not a free agent, but was acting under undue control, the jury may, if they please, and all the circumstances in the case, in their opinion, will justify it, find, even in the absence of evidence bearing directly on the execution of the will, that in regard to that, also, the same undue influence was exercised.

The Court, (WICKES and STUMP, J.,) granted the prayers of the caveatee, and the first prayer of the caveator, and refused the second prayer of the caveator. The caveator excepted, and the verdict being against him, he appealed.

The cause was submitted to MILLER, YELLOTT, STONE, ALVEY, and IRVING, J.

*C. C. Crothers,* and *Albert Constable,* for the appellant.

*L. M. Haines,* and *William J. Jones,* for the appellee.

MILLER, J., delivered the opinion of the Court.

This appeal presents for review the rulings of the Court below on the trial of issues framed upon a caveat to the will of Firman Layman. This will was executed on the 4th of February, 1881, and the testator died on the 4th of March following, at the age of seventy-two years, leaving, surviving him, four children, and three grandchildren, children of a deceased son. The issues, three in number, were: 1st. Was the alleged will duly executed? 2nd. Was the testator at the time of its execution of sound and disposing mind, memory and understanding, and capable of making a valid deed or contract? And 3rd, was it procured by the importunity or undue influence of Eliza Ross, or any other person or persons, at a time when he was unable to resist the same, and which deprived him of his free agency, so that the alleged will was not his free and unconstrained act? At the trial three

exceptions were taken by the caveator, of which two relate to the admissibility of evidence, and the other to the granting of the caveatee's prayers, and to the refusal to grant the second prayer of the caveator, and we shall consider them in the order in which they were taken.

1st. In the course of the testimony on the part of the caveator he offered to prove by Mrs. Buskirk, one of his witnesses, that shortly before the testator died, Mrs. Susanna Price, who was the daughter of Eliza Ross, a legatee under the will, and the wife of James M. Price, one of the attesting witnesses thereto, *told witness the contents of the testator's will,* and upon objection made by the caveatee, the Court refused to allow this testimony to be given to the jury. The appellant's counsel in their brief have, taken no notice of this exception and we therefore assume they have abandoned it. The ruling however was clearly right. There was no accompanying offer to show that Mrs. Price had acquired knowledge of the contents of the will in any improper manner, or under such circumstances as would make this knowledge tend to sustain the affirmative of the issue relating to undue influence. Mrs. Price took no benefit under the will and there is no evidence in the record that she ever had or ever exerted any influence whatever over the testator. For aught that appears she may have acquired this knowledge in many entirely innocent ways, as for instance, from the executor who drew the will and was afterwards entrusted with its custody.

2nd. Samuel P. Wood, a witness for the caveatee, testified in chief that he had known the testator for many years, that he saw him frequently while he was sick and he talked as rational as he ever did, and, in witness' opinion, was just as competent then, as he ever was, to make a valid deed or contract; that he was not easily swayed, was very positive and would carry his point; that he had heard him talk about his will and say he intended

to take care of Lizzie (one of his daughters) and Willie (her son) and Mrs. Ross. On cross-examination this witness said the last time he saw the testator was on the last Monday of January, 1881; that testator, who was in his bed-room, sent to inquire if witness was going to Elkton, and wanted him to bring Mr. Jones down to write his will; witness told him he was going next day and when he went back next day to get his message, testator said never mind as he would be able himself to go to Elkton to get his will written; that he also said "if he died without making a will, the boys would kick Lizzie and Mrs. Ross out doors quick; and he was not going to let them; said he wanted to take care of Willie, Lizzie and Mrs. Ross;" that witness was very intimate with the testator and on the friendliest terms up to the last; that testator did not blame him for being the man who informed on him for selling liquor to minors, and having him indicted therefor; that testator did so blame him at one time but subsequently became convinced that he was in error. After the caveatee had closed his testimony, the caveator called John Wolf, a competent witness, who testified that he had known the testator for many years and had a number of conversations with him in January, 1881, in one or more of which he expressed his opinion very freely in regard to Samuel P. Wood. The caveator then asked the witness what the testator *had said* in regard to Wood, and his feelings towards him, and particularly what testator *had said* in regard to Wood and the indictment for selling liquor to minors. The caveatee objected to this question and the Court sustained the objection and refused to allow the question to be answered, or what the testator *had said* to be stated in the testator's language, but permitted the witness to state whether the testator's feelings were kind or otherwise at that time towards Wood. The caveator excepted to the action of the Court in excluding the answer to this question, and in refusing to allow the witness to give the testator's language in evidence to the jury.

In our opinion the Court, in this ruling, went quite as far, if not farther than, the rules of evidence permit, in allowing this witness to state whether the testator's feelings, as manifested by his language to him, were then kind or otherwise towards Wood. The only possible legal object the caveator could have had in seeking to introduce this testimony was to contradict Wood's statement on his cross-examination that the relations between him and the testator were friendly, notwithstanding the indictment, and in this way to impeach or affect Wood's credibility as a witness. But Wood could only judge of the feelings the testator had for him by the manifestations which the testator made of those feelings to him or in his presence. If to him and in his presence the testator manifested friendly feelings, he could truthfully testify that friendly relations existed between them, and that testimony could hardly be contradicted by proof that the testator had, to others and out of his presence, manifested by language no matter how violent, unfriendly feelings, and clearly his credibility as a witness could not be impeached or affected by the introduction of such language without any proof that he ever knew or heard of it. The only legal effect of such evidence would be to show the testator's insincerity instead of Wood's want of veracity. In no view whatever that can be taken of this ruling, has the caveator any ground to complain of it.

3rd. The legal propositions stated in the caveatee's first, second, third, fourth, and sixth prayers have been clearly established by repeated decisions of this Court, and no objection has been made to them by the appellant's counsel in their brief. They correctly announce the law as applicable to this case. But objection is made to the granting of his fifth prayer by which the Court instructed the jury "that the influence which will avoid this will must be exerted to such a degree as to amount to force or coercion, destroying free agency; it must not be the

influence of affection or attachment, nor the mere desire of gratifying the wishes of another, for that would be a very strong ground in favor of a testamentary act, and there must be satisfactory proof that the will was obtained by this coercion, or by importunities which could not be resisted so that the motive was tantamount to force or fear."

This was one of the instructions granted in *Higgins, et al. vs. Carlton & Scaggs*, 28 *Md.*, 115, and was approved by this Court as announcing a familiar principle of law so firmly established by numerous and uniform decisions that it is now too late to call it in question. But it is argued that it is not applicable to the facts appearing in this case, and this requires us to notice briefly what the facts alluded to as bearing upon this question really are. Mrs. Ross is the only person against whom there is any evidence whatever of the possession or exertion of any influence over the testator. She came to live with him about six months after the death of his wife and remained with him until his death, a period of about twenty-two years. He kept a hotel and she was his house-keeper, and, according to the testimony of one of the witnesses on the part of the caveator she was a good house-keeper, and in the opinion of commercial travellers kept the best house on the Eastern Shore; that the testator had great respect for her judgment and opinions both as regards house-keeping and outside matters. But there is also evidence tending to show that during this period she was not only his house-keeper but his kept mistress, and this is relied on as the peculiar circumstance which makes this instruction inapplicable in the present case. The law unquestionably condemns such relation, and it may also be true that it looks with suspicion upon any influence thereby acquired, and that in such a case whenever it appears that any important benefit has been secured to the mistress by a testamentary instrument, to the prejudice of the lawful

heirs, such benefit would be more readily attributed to *undue influence* than where the same benefit is conferred upon one standing in a natural and lawful relation to the testator. But we fail to find upon the face of this will any such benefit conferred upon Mrs. Ross as would warrant the inference that it was secured by any influence springing out of this unlawful relation. The will gives her only a *life estate* in property worth *in fee* from $800 to $1000, and which now rents for $120 per annum, but is much dilapidated, and she was at the testator's death over sixty years of age. It would be an inference harsh in the extreme, and altogether unwarranted, that this small benefaction was procured by virtue of any undue influence growing out of the unlawful relation, instead of a mere recognition by the testator of her valuable services as his house-keeper. The case is totally unlike that of *Dean and Wife vs. Negley, et al.*, 41 *Penn. State Rep.*, 312, where, as we understand it, the testator devised his whole estate to the daughters of the woman with whom the illicit relation existed, and to strangers not connected with him by blood or otherwise, and gave nothing to his only daughter and sole heir-at-law. In this will some of the heirs-at-law are wholly unprovided for, and a great difference is made between others. His daughter Elizabeth, (Mrs. Pryor,) and her son William are the principal beneficiaries. They receive by specific devise property valued at $5000, and are also the sole residuary devisees and legatees. Now if Mrs. Ross exerted any influence or had anything to do with this, the caveator had the full benefit of the law on that subject by the granting of his first prayer, by which the jury were instructed that if they believe that Mrs. Ross, or any other person, for the purpose of influencing the testator in making his will, raised prejudices in his mind against those who would otherwise have been the natural objects of his bounty, and by contrivance kept him from intercourse with them so

that such prejudices might be removed, then the jury are entitled to consider these facts in connection with other facts in the case in deciding the issue relating to undue influence. With this instruction given to the jury, and in view of the very small provision made by the will in favor of Mrs. Ross, and what we have said in regard to it, there is no ground for a reversal on account of any supposed error in the granting of the caveatee's fifth prayer.

It is further insisted there was error in the refusal to grant the caveator's second prayer, to the effect, that while it is true that the undue influence to avoid a will must be exercised in relation to the will itself, still if the jury believe that at or near the time when this will was executed the testator was in *other important transactions,* so under the influence of Mrs. Ross, *or other person or persons* benefited by the will, that as to them he was not a free agent, but was acting under undue control, the jury may, if they please, and all the circumstances in the case in their opinion will justify it, find even in the absence of evidence bearing directly on the execution of the will, that in regard to that also, the same undue influence was exercised.

It is admitted that this prayer is founded upon a part of the judgment of the *Lord Chancellor* in *Boyse vs. Rossborough,* 6 *House of Lords Cases,* 51; where, after stating the general rule that the undue influence must be an influence exercised in relation to the will itself, and not an influence in relation to other matters or transactions, his Lordship adds: " But this principle must not be carried too far. Where a jury sees that at and near the time when the will sought to be impeached was executed, the alleged testator was, in other important transactions, so under the influence of the persons benefited by the will, that as to them he was not a free agent, but was acting under undue control, the circumstances may be such as fairly to warrant the conclusion, even in the absence of evidence bearing

directly on the execution of the will, that in regard to that also the same undue influence was exercised." But conceding (and *argumenti gratia* only,) that the law thus stated is correct and ought to be given as an *independent instruction* to the jury in all cases where there is sufficient proof to warrant its application, still the prayer in question is fatally defective because it leaves to the jury to find that the testator was so under the influence of some "other person or persons benefited by the will" besides Mrs. Ross, in other important transactions, as not to be a free agent in regard to such transactions. There is no scintilla of proof in the record that such other person ever had or ever attempted to exert, any influence whatever over the testator in reference to such transactions. In fact the evidence points to no one else as ever having had any influence with him. For this reason alone (and without reference to other objections to it,) there was clearly no error in the rejection of this prayer.

*Rulings affirmed, and*
*cause remanded.*