# CHARLOTTE SOMERS et al. *vs.* GEORGE S. Mc-CREADY, Executor.

*Wills—Caveat—Insufficient Evidence of Undue Influence.*

The evidence offered by the caveators upon the trial of a caveat to a will, upon the ground that it had been procured by undue influence exercised upon the testator, examined and held to be legally insufficient to show that the will was made as the result of importunities which deprived the testator of his free agency and that consequently the trial Court properly instructed the jury to find for the defendants.

Appeal from the Superior Court of Baltimore City (WRIGHT, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, SCHMUCKER and JONES, JJ.

*Alonzo L. Miles* and *Arthur P. Gorman, Jr.*, for the appellant.

*Thomas S. Baer* and *Edgar H. Gans*, for the appellee.

JONES, J., delivered the opinion of the Court.

The appellants here filed in the Orphans' Court of Baltimore City a caveat against the probate of the will of James W. McCready, who died in that city April 15th, 1900. Upon this caveat issues were framed and sent to the Superior Court of Baltimore City for trial. This appeal brings up for review certain rulings of the trial Court made in the course of such trial. The issues were four in number. The first involved the *factum* of the will; the second the knowledge of the testator of the contents of the will at or before its execution; the third undue influence exercised upon the testator in procuring the will and the fourth testamentary capacity.

At the trial nine exceptions were taken to rulings upon objections to testimony offered on the part of the appellants and refused admission by the Court. At the close of the testimony the trial court directed a verdict, upon each and every issue, to be returned by the jury against the contention made by the caveators. The tenth and last exception in the record was taken to this ruling. Though this exception embraces the rulings upon all of the instructions granted by the Court below the only one of them that we are concerned with here is that which respects the issue involving the question of undue influence in procuring the will in question. All the others have been, not expressly, but practically abandoned by the caveators (appellants) in presenting the case in this Court. As to the issue last mentioned the trial court ruled " that there is no evidence in this case legally sufficient to show that" the

will involved in this controversy, "was procured by undue influence exercised and practiced upon" the testator and directed a verdict accordingly for the caveatee (appellee here.) All the exceptions bringing up rulings upon questions of evidence relate to testimony offered by the appellants as being relevant to this issue. Without having reference now to the evidence made the subject of these exceptions, and following the order of inquiry of the appellants' brief, the instruction of the Court relating to the issue in respect to undue influence will be first examined in the light of the "admitted evidence." The inquiry as to this is was the trial Court right in ruling that the evidence was not legally sufficient to show that the will in controversy "was procured by undue influence exercised and practiced upon" the testator.

What is undue influence, or the influence, that a testator must be shown to have been subjected to in executing a will, that will vitiate and avoid it, has been defined by this Court in a number of, and in some recent, cases. In the case of *Hiss* v. *Weik*, 78 Md. 439, it is said "undue influence is that degree of importunity which deprives a testator of his free agency, which is such as he is too weak to resist, and will render the instrument executed under its influence not his free and unconstrained act." An instruction to the jury granted in that case by the Court below and affirmed by this Court was to the effect and in language as follows: "The influence which will avoid the will of a testator must have been exerted on the testator to such a degree as to have amounted to force and coercion destroying his free agency or by importunities that could not be resisted, so that the motive was equal to force or fear; it must not have been the influence of affection or attachment, or the mere desire to gratify the wishes of another, for that would be a very strong ground in favor of a testamentary act; and the burden of proof is upon the plaintiff * * to show not only that such influence existed, but that it was exerted for the purpose of procuring the execution of the will * * and that the same was obtained by means of the undue influence so exerted." To the same effect in

defining undue influence is the case of *Grove* v. *Spiker*, 72 Md. 300. In *Schouler on Wills* it is said "undue influence is defined as that which compels the testator to do that which is against his will, from fear, the desire of peace, or some feeling which he is unable to resist. We say that the influence must be undue, in order to vitiate the instrument, because influences of one kind or another surround every human being and operate necessarily in determining his course of conduct under every relation of life." And again, "to invalidate a will on the ground of fraud, compulsion or undue influence, such conduct must be of such a character as to destroy the testator's free agency, and substitute for his own another person's will;" see secs. 227 and 229. Further in sec. 232 it is said "the constraint or fraud or undue influence necessary to set aside a will must be a present constraint, fraud or undue influence operating on the testator's mind in the very act of making the will." What the learned author states as the result of all of the authorities as to the character of the influence which in law will avoid a testamentary act is in accord with what has been laid down, as we have seen, in our own decisions.

From what thus appears to be the rule of law by which we are to be guided in the inquiry as to the sufficiency of evidence to support a charge of undue influence in the procuring of a will it is not sufficient to condemn and avoid the will to find that there was influence which affected the testator's disposition of his property; but it must be, to vitiate his act, such influence as, at the time he was making such disposition, dominated his will, took away his free agency and prevented the exercise of judgment and choice by him. There may have been advice, suggestion or importunity going to affect his purpose and his act in the disposition he chooses to make; yet if he had testamentary capacity and was free and unconstrained in his volition at the time of making his will the influence that may have inspired it or any of its provisions will not be that influence which the law denounces as undue. The inquiry to be made in any given case goes to the effect of the influence in bringing about the testamentary act, and how the effect

was produced ; and includes first, the existence of the influ-
ence ; second, the opportunity for it to be exerted ; and third,
its actual exercise or operation to the extent and in such a way
as to make the act in question the product of the influence un-
controlled by and irrespective of, any volition on the part of
the testator.

We may now examine the evidence in this case in respect
to the inquiry before us.    Was there evidence legally sufficient
to be submitted to the jury upon the issue that proposed the
question whether the will of James W. McCready " was pro-
cured by undue influence exercised and practiced upon him."
This may be briefly done dealing with the nature and purport
of the evidence rather than with its details.    This Court has
said, and repeated, that on a question depending, as this does,
entirely upon the evidence " no good result can possibly arise
from a recapitulation of the evidence.    It is enough for the
Court to announce the conclusion it arrives at."    *Stirling* v.
*Stirling*, 64 Md. 138; *Moore* v. *McDonald*, 68 Md. 321; *Hiss*
v. *Weik*, 78 Md. 439.    Here, however, brief reference to the
evidence may be appropriate.    There was no testimony at all
offered by the caveatee (appellee).    All of the evidence pro-
duced was offered on the part of the caveators ; and as respects
the question of its legal sufficiency it must be assumed to be
true.    The inquiry is whether any of it shows, or tends, by
any legitimate inference, to show, the fact of influence exerted
by anybody upon the testator to the extent that it was, by
dominating his mind and will, the procuring cause of the testa-
mentary disposition he made.

There is nowhere in the record any positive or affirmative
proof going directly to the fact of the existence of any spe-
cial or peculiar influence by anybody over the testator at any
time.    The three persons who are sought to be connected by
the evidence with the procuring of the will are the appellee, a
sister of the deceased wife of the testator, and a nephew, all
of whom are beneficiaries under the will.    The only facts
shown in this connection as respects the two last mentioned
persons are that they are beneficiaries under the will and were

of the household of the testator at the time of the making of the will and during his last illness—together with the further fact that during this illness relatives of the testator who called to see him and inquire for him were denied admittance to his sick room upon the ground that his condition rendered this inadvisable, which representations as to his condition are not shown to be untrue. On the contrary the evidence tends to show them to have been true. As to the appellee, who was a brother of the testator and the executor of his will, without bond, as well as beneficiary thereunder, it is shown that he was with the testator in his last illness; that he went for, and procured the attendance of, the attorney who was the draughtsman of the will; was present at the interview between the attorney and the testator when the terms and provisions of the will were arranged and also at the final execution of the will—both interviews occurring the same day; and that he stated to the attorney at the time he called upon him, in response to an inquiry as to what the testator wanted to do that he "understood that his brother wanted to give his property in three parts;" one to a sister, a Mrs. Nelson, another to a sister, a Mrs. Connor, and the third to the appellee himself—these gifts to be in trust for their children. In response to further inquiry by the attorney upon the same line he said "when you get there," meaning to the testator's residence, you "can talk to him and find out exactly what he wants."

The attorney, Mr. Lyons, who drew the will was called as a witness by the appellants and testified that at the time of the execution of the will the testator showed an intelligent grasp of the business he was about; dictated the terms of the will, which varied from what the appellee had stated he thought was his intention; that though suffering physically he was able to give all necessary attention to the execution of the paper; that he appeared to have full mental capacity and alertness; that there was no indication, "not the slightest," that he had not a proper understanding of what he was doing; and that there was "not the slightest" indication of any pressure or influence of any kind being put upon him as far as "he

could see.'' It also appeared from the testimony of this wit-
ness that not only was the testator under the protection of a
competent legal adviser in executing his will; but that the
final completion of the same by the signature of the testator
and of witnesses was timed so that he had also the protection
of his family physician who was attending him in his illness
as one of the witnesses to his will.

The testator was a widower without children and left sur-
viving him as those who, in the absence of a will, would have
succeeded to his estate five sisters and two brothers and the
children of two deceased brothers one of whom left seven chil-
dren and the other one child. There were over forty-two
nephews and nieces—children of these brothers and sisters.
He left an estate of about $40,000 and by his will divided it
into three parts—one of which he gave to the appellee and
his four children ''in equal shares''—to each one-fifth, one-
third to his sister a Mrs. Nelson and her six children in equal
shares—one-seventh to each, and one-third to a sister, a Mrs.
Conner, of Chicago, Illinois, and her seven children in equal
shares—to each one-eighth. To his sister-in-law, a Mrs.
Martin, who had, in the lifetime of his wife, been a member of
his household and who had been with him in his last illness,
he gave $250. It appeared in evidence that in former years
the testator had been a partner in business with the appellee
and in later years had had the same business relation with the
sons of Mrs. Nelson, his sister to whom with her children he
left one-third of his estate; and had been in closer association
with them than with the most of his other relations. Any-
thing to suggest a preference of his sister Mrs. Conner over
others of his sisters and brothers does not appear.

As tending to show that this was an unnatural will and was
therefore inspired by some motive or influence other than
could have proceeded from the testator's own free and unin-
fluenced mind a number of witnesses, mostly relatives who
seem, the most of them, to have had very little association
with the testator in his lifetime and to have seen very little of
him testified to his relations with others of his family and the

feelings he had manifested towards them as contrasted with those he had shown towards the appellee. Stress was more particularly laid on the absence of any provision in the will for an aged and infirm sister of the testator from whom in earlier life he had received kindness and care ; and towards whom he had always shown affection by manifesting a solicitude for her comfort, extending pecunniary aid and providing for her wants. This is about the character and purport of the evidence offered in support of the issue as to undue influence.

To permit this evidence to be submitted to the jury to find from it the existence and exercise of undue influence, as such influence is defined in the law, in the procuring of the will here in controversy, would be not only to allow them to indulge in pure surmise and speculation, but to allow the possibility of a verdict being rendered upon such surmise and speculation in opposition to positive and uncontradicted evidence upon the part of the caveators that no such influence was present when the testamentary act was performed. None of the evidence adduced afforded any fair logical inference of the existence of any influence that could have had the dominion over the mind and will of the testator at the time of the testamentary act that would have made it undue influence ; and the only evidence as to the exercise or presence of undue influence at the time of the act is the positive evidence that no such influence was apparent or present.

It is urged that the case should "have gone to the jury in the absence of some explanation from" the appellee "and other legatees of" the facts appearing in evidence designed to show that they were enjoying the benefits of a will procured by the exercise of an improper influence upon the testator ; for the reason as it would seem that their not meeting these facts with denial or explanation was in effect an admission of the truth of them. Such a consideration would seem to have no force in a situation such as this. The attitude of the appellee here admits the truth of the facts, but that does not give them probative force. The case is being considered upon the assumption of the truth of the facts and if there had been

an express admission of the truth of them by the appellee or if, as a witness, he had sworn to their truth it would not have given them any more effect. If the facts in evidence were immaterial and without force or effect to prove what they were designed to prove the Court would not be justified in submitting them to the jury as a basis for a verdict simply because they had not been denied. Where facts are in evidence affording legitimate inferences going to establish the ultimate fact that the evidence is designed to prove and the party to be affected by the proof, with an opportunity to do so, fails to deny or explain them they may well be taken as admitted with all the effect of the inferences afforded. The case of *Hiss* v. *Weik, supra,* is an illustration of this. There the Court said the jury were at liberty to draw inferences from the silence of parties against whom it was pointed out there was evidence going, in itself, to show that they were connected with the improper influence which was there the subject of inquiry.

The exceptions to evidence can be briefly disposed of. It is not necessary to extend this opinion by discussing these exceptions *seriatim.* As to the fifth exception it was properly ruled by the Court that the evidence offered was not admissible because of being mere hearsay. As to all the others it need only be said that the evidence offered did not, of itself, have any tendency to prove the existence of undue influence present and operating upon the testator at the time of the testamentary act in question; and there being no evidence in the cause legally sufficient to show this with which the excluded evidence could have had any connection it was properly ruled out. This makes it unnecessary to advert to the legal question raised in this connection by the counsel for the appellee as to whether it is competent at all to offer the declarations of a legatee or executor under a will as against other legatees or beneficiaries to show undue influence.

It results from the foregoing views that the rulings of the the trial Court in this case must be affirmed.

*Rulings affirmed and cause remanded.*

(Decided January 21st, 1903.)