## SARAH SAXTON *vs.* SOPHIA KRUMM.

*Wills—Undue Influence—Bequest of Property to Testator's Mistress.*

The fact that a testator bequeathed his property to his mistress, and that such disposition ignored the claims of his relatives, is not in itself evidence that the will was procured by the exercise of undue influence.

A testator, who left surviving him as his only heirs at law and next of kin two sisters and certain nephews and nieces, the children of two deceased sisters, gave and bequeathed all of his property to a woman who at the time of the execution of the will, five years before the testator's death, and afterwards, was his mistress. Upon a caveat to the will by one of the sisters, who was old and dependent upon others for support, there was no evidence that any fraud or undue influence had been practiced upon the testator, who possessed testamentary capacity. *Held*, that the existence of the illicit sexual relation between the testator and the legatee raises no presumption that the will was procured by undue influence, and there being no other evidence of such influence, the jury was properly instructed to return a verdict for the caveatee.

*Decided February 26th, 1908.*

Appeal from the Circuit Court for Allegany County (HENDERSON and KEEDY, JJ.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

*A. C. Strite* and *Chas. D. Wagaman* (with whom were *Wm. F. Shay* and *Ferdinand Williams* on the brief), for the appellant.

The testimony in the record discloses that C. F. Young, a kindly, good-natured, mild-tempered, pious and just man, having a sister whom he loved and cared for in her aged and needy condition in life, with a well settled conviction that it was his duty and an expressed determination and desire to care and provide for her in case he died first, having actually made a will making such provision for her and without having shown any change from that affectionate regard for her welfare

which he had always manifested, and with none other than his relatives who can by any manner claim any share in his bounty, is at last proclaimed as the author of a will which at once would stamp him as an unnatural and hard-hearted brother, an unjust man, and his whole life and conduct toward his sister a delusion.

His hand directed and controlled by some dominating influence may have penned his signature to that document which purports to give his entire estate to a married woman—a stranger with no claims upon his bounty, to the exclusion of those whom he cherished and provided for in life, but the natural and irresistible inference is that his mind did not co-operate with the hand, that it was not his voluntary act, that he was not a free agent. To use the language of this Court in *Hiss* v. *Weik*, 78 Md. 452, it is "So repugnant to the dictates of parental (or brotherly) affection, so at variance with the instincts of a just man and so divergent from the course which according to his antecedent declarations (and relations) might have been expected that it would be perfectly natural to draw the inference that such a will was procured by undue influence, and was not the voluntary emanation of an unbiased mind."

But the jury was not left in doubt or to indulge in speculation as to the source and character of that influence. The evidence showed that the sole beneficiary under that document had secretly and unlawfully come into his life in such a way as to possess an influence so powerful, that, if inspired by motives of mutual attractiveness and love will even separate husband and wife to the end that the relation may become lawful, or, if inspired by motives of gain, as the results demonstrate was the case here, subjects the unmarried man guilty of illicit intercourse with a married woman either to a submission to the quiet and secret demands of the woman or the fear of shame and exposure and the vengeance of a wronged and enraged husband.

But it may be argued that this will is the influence of affection or attachment and therefore a strong ground in favor

of a testamentary act. That would undoubtedly be true in some cases and under different circumstances, There is no evidence in the case however that *he* showed any real affection or attachment for *her*. She it was who laid the plan at the railroad station at Watsontown that inveigled him into her house at night during the absence of her husband. She it was who left her home, her husband and child and came to Hagerstown to spend the time with him. She it was who volunteered the parting kiss. She it was who wrote the affectionate letters in the case. She it was who appealed to his lustful passion and kept him inflamed by her vile correspondence. She played upon his weakness and he fell, but there is no evidence of his affection for her except as she permitted and invited him to gratify his lust.

This Court in view of the testimony in this case, can not conclude or even infer that the affections of a lifetime, manifested so abundantly by C. F. Young toward his old sister who had been a mother to him, were so entirely obliterated and forgotten at the time his will was made that he from motives of affection and attachment alone, could deliberately and voluntarily choose to cast that old sister upon the charity of others and bestow all his goods upon a stranger in blood who has no claim to his favor that can appeal to either a sense of justice, equity or even laudable sentiment. The will itself gives no higher claim for existence than friendship and reflects the sterility of the whole case in the search for sufficient motives for its unjust provisions. But this matter of affection and attachment or other motives which may have prompted the execution of the will, if fairly deducible from the testimony in the case, are matters for the consideration of the jury.

If the influence is shown to exist, direct evidence of the methods employed to exert it is not required where the party possessing the influence is the sole beneficiary and a stranger —having no claim from lawful relationship. *Boyd* v. *Boyd*, 66 Pa. St. 293.

The results accomplished in a given case, the divergence of those results from the course which would ordinarily and

naturally be looked for, the situation of the party taking ben-
efits under a will towards the person who has executed it, and
their antecedent relations and dealings with each other, the
legitimate, but unrecognized claims of others upon the bounty
of the testator and their dependence upon him, the instincts of
justice of which every unbiassed mind is sensible, the natural
ties of parental affection, together with all the circumstances
surrounding the transaction under investigation, and the infer-
ences legitimately deducible from them, often furnish, *in the
absence of direct evidence (which from the very nature and
secrecy of the wrong itself, is rarely obtainable)* ample ground
for the conclusion that undue influence has been used to
accomplish an end which may be gross in its injustice, and
whose very existence cannot be satisfactorily accounted for
except upon the hypothesis that undue influence has pro-
duced it.    *Grove* v. *Spiker,* 72 Md. 300.    The above was
quoted in *Hiss* v. *Weik,* 78 Md. 447, and it is peculiarly appli-
cable to the present case.

An adulterous relation existing between the testator and the
beneficiary at the time of the execution of the will is evidence
of undue influence and should be submitted to the jury.  *Dean*
v. *Negley,* 41 Pa. St. 318; *Reichenbach* v. *Ruddach,* 127 Pa.
St. 593; *Main* v. *Ryder,* 84 Pa. St. 225; *Monroe* v. *Barclay,*
17 Ohio St. 318; *Layman* v. *Conrey,* 60 Md. 293.

*Alex. Armstrong, Jr.,* (with whom were *Norman B. Scott,
Jr., J. Clarence Lane* and *A. A. Doub* on the brief ), for the ap-
pellee.

C. F. Young, at the time about fifty years of age, in good
health and of sound and disposing mind, wrote the will in
question in Hagerstown, Md., in January, 1899, nearly five
years before he died, and executed it there on the 14th day of
that month.    Mrs. Krumm was in Watsontown at that time,
and had not been in Hagerstown since before 1897—the year
in which Mrs. Young died, and she did not visit there again
until in May, 1901.    The record shows that Mrs. Krumm
had not seen Mr. Young since Christmas, 1897, when he vis-

ited Watsontown and Williamsport for a few days.   There is
nothing to show that anything in regard to a will passed be-
tween them at that time.    An examination of the record will
also disclose that there is no evidence anywhere which even
tends to show any act of undue influence on the part of Mrs.
Krumm.   Neither is there any evidence of the existence of
any influence, as the Court in *Somers* v. *McCready*, 96 Md.
440, says there must be; nor is there any evidence of any op-
portunity at the time of making the will to exercise the influ-
ence, if it did exist; and the record is absolutely devoid of
anything that shows, or even tends to show, the actual exer-
cise or operation of any influence to the extent and in such a
way as to make the act in question (that is the will) the pro-
duct of the influence uncontrolled by and irrespective of any
volition on the part of the testator.

The plaintiff's contention that undue influence existed and
was exercised is based upon two things.   First, they contend
that the testimony shows improper relations between Mrs.
Krumm and Mr. Young; and second, that the provisions of the
will itself are proof of such influence.    Assuming, as we must,
the truth of the testimony from which the plaintiff infers im-
proper conduct on the part of these parties, and from the ex-
istence of which relation plaintiff asks the Court to presume,
as matter of law, that undue influence existed and procured
the making of the will, at best the testimony only brings them
together twice—once in 1897, sometime before the will was
made—in Watsontown, and again in Hagerstown, in May,
1901, about a year and a half after the will was made.

· If these relations did exist they certainly were not of the
character shown in any of the cases to be found in the books,
in all of which the relations were continuous and open.    In
all these cases the Courts have uniformly held that the fact
itself of the existence of such relation is not proof of undue
influence, and that it can only be considered as an element, *in
connection with other facts*, to show that the influence actually
was present at the time of making the will, and that it was ex-
ercised to the extent and in the way that it must be in order

to be denounced as undue.　The Courts have all declared that no presumption of undue influence follows from the existence of such relations. *Davis* v. *Calvert*, 5 G. & J. 272; *Layman* v. *Conrey*, 60 Md. 286; *Dalrymple* v. *Gamble*, 68 Md. 531; *Re Mondorff*, 110 N. Y. 450; *McClure* v. *McClure*, 86 Tenn. 178; *Porchet* v. *Porchet*, 82 Ky. 93; *O'Neill* v. *Farr*, 1 Rich. (S. C.) 83; *Farr* v. *Thompson*, 1 Cheves, 37; *Monroe* v. *Barclay*, 17 Ohio St. Rep. 302; *Dean* v. *Negley*, 41 Penn. St. 312; *Rudy* v. *Ulrich*, 69 Penn. St. 181; *Main* v. *Ryder*, 84 Penn. St. 217; *Wainright's Appeal*, 89 Penn. St. Rep. 220; *Appeal of Johnson*, 28 Atl. Rep. 448.

BURKE, J., delivered the opinion of the Court.

A paper writing dated the 14th day of January, 1899, purporting to be the last will and testament of Christian F. Young, was offered for probate in the Orphans' Court of Washington County.　By this paper the testator gave and bequeathed to Mrs. Lewis Krumm his house and lot situated in Watsontown, Pennsylvania, and all his money in banks, and all notes and bonds, and all valuables in his name and in his possession, if she survived him.　On the petition and caveat of the appellant, who is a sister of the testator, three issues were sent to the Circuit Court for Washington County for trial.　The first issue related to the execution and attestation of the will; and the second and third issues related to fraud and undue influence exercised and practiced upon the testator in the making of the will.　The case was removed to the Circuit Court for Allegany County.　The trial in that Court resulted in a verdict for the defendant upon each of the issues.

This record brings up for review certain rulings of the lower Court made during the trial.　There are three exceptions in the record.　Two relate to rulings upon questions of evidence and one to the action of the Court upon the prayers.　At the close of the plaintiff's case the Court granted three prayers by which the jury were instructed to find their verdict for the defendant upon each issue.

The main and practically the only question in the case,

arises under the second prayer granted by the Court. By this instruction the jury were told that the plaintiff had offered no legally sufficient evidence to show that the will in question was procured by undue influence. The testator undoubtedly had the right to dispose of his property in any manner he deemed proper, consistent with the policy of the law, and it is no valid objection to the will that he gave his property to a stranger in blood; provided he was mentally competent to execute a valid deed or contract, and was free from undue influence at the time. There is not the slightest evidence that Christian F. Young was not fully competent to make the will in question. The issues of fraud and undue influence assume his testamentary capacity. It is not pretended, nor is there a particle of evidence in the record to show that the will was procured by fraud; but it was earnestly contended that the record contains sufficient evidence to have justified the jury in finding that the will was procured by undue influence. Upon this issue the burden was upon the plaintiff, and she was obliged to offer evidence tending to show that the will was the product of an influence exerted upon the testator to such a degree as to amount to force, or coercion, or by importunities which he could not resist, so that the motive was tantamount to force or fear. This is the established law in this State, and has been applied in numerous adjudged cases in this Court. *Davis* v. *Calvert*, 5 G. & J. 269; *Higgins* v. *Carlton*, 28 Md. 125; *Layman* v. *Conrey*, 60 Md. 286; *Sterling* v. *Sterling*, 64 Md. 151; *Zimmerman* v. *Bitner*, 79 Md. 128. In *Somers* v. *McCready*, 96 Md. 439, where the question now before us was under consideration, the Court speaking through the late JUDGE JONES said: "From what appears to be the rule of law by which we are to be guided in the inquiry as to the sufficiency of evidence to support a charge of indue influence in the procuring of a will it is not sufficient to condemn and avoid the will to find that there was influence which affected the testator's disposition of his property; but it must be, to vitiate his act, such influence as, at the time he was making such disposition, dominated his will,

took away his free agency and prevented the exercise of judgment and choice by him. There may have been advice, suggestion or importunity going to affect his purpose and act in the disposition he chooses to make; yet if he had testamentary capacity and was free and unconstrained in his volition at the time of making his will the influence that may have inspired it or any of its provisions will not be that influence which the law denounces as undue. The inquiry to be made in any given case goes to the effect of the influence in bringing about the testamentary act, and how the effect was produced; and includes first, the exercise of the influence; second, the opportunity for it to be exerted; and third, its actual exercise or operation to the extent and in such a way as to make the act in question the product of the influence uncontrolled by and irrespective of any volition on the part of the testator."

When the evidence contained in this record is tested by this well established rule is it legally sufficient to support the issue of undue influence? The testator died at Hagerstown, Maryland, in December, 1904. His wife had died in 1897. His only heirs at law were two sisters, one of whom is the appellant, and some nephews and nieces, children of two deceased sisters. Mrs. Saxton, the appellee, is a widowed sister of the testator, and was about sixty-three years of age at the time of his death, and is dependent upon others for her support. When the testator was a boy she had taken care of him. Shortly after the death of his wife in 1897 he made a will by which, after giving some small legacies to a number of his relatives he devised and bequeathed one-third of the remainder of his estate to the appellant, stating at the time that she had taken him into her home when he was a boy and had been a mother to him. He had contributed small sums of money for her support, always spoke kindly of her, and appeared to be attached to her, and this apparently affectionate relation continued down to the time of his death. There is evidence in the record to the effect that at Christmas, 1899, the testator told the appellant that she would have his property in case he died before her.

The will in controversy was written by the testator in Hagerstown, and was attested by two reputable and credible witnesses, both of whom were dead at the time of the trial, but whose signatures were proved. The caveatee, Mrs. Krumm, was not in Maryland when the will was made, and there is no evidence whatever in the record of any acts of undue influence exerted over him at that time, or at any other time. There is no evidence of suggestion, advice, or importunity on her part as to the disposition of his property. It is not shown that she ever discussed that matter with him, and there is nothing whatever to show the circumstances under which the will was made. The testator had known Mrs. Krumm in Watsontown before he moved to Maryland, and prior to the death of his wife had been on friendly terms with her. There is evidence tending to show that after Mrs. Young's death, the testator had committed acts of adultery with the appellee in Watsontown, Pennsylvania, in 1897, and in Hagerstown in 1901. They corresponded frequently, and some of the letters of the appellee contained allusions of an impure and vulgar nature. But no reference is found in any of them to his business affairs.

The position of the appellant is that it was competent for the jury, as matter of law, to infer the will was procured by undue influence from the testator's illicit relation with the legatee, and from the unnatural disposition of the property, which disposition is contrary to his previously expressed purpose. To this proposition, which was earnestly pressed upon us by the very able arguments of the appellant's counsel, we cannot assent. There appears to be a general concurrence in the authorities that neither an illicit relation, nor an unjust and unnatural disposition of the property is sufficient *per se* to warrant a conclusion of undue influence. They are circumstances properly to be considered by the jury in connection with evidence of undue influence, but they are not in themselves evidence either of fraud, or undue influence. Where there is evidence of external acts of fraud, or undue influence, and especially where there is evidence that the capacity of the

testator was impaired, the circumstances here relied on would be of great weight, as is evidenced from the cases of *Grove* v. *Spiker*, 77 Md. 300; and *Hiss* v. *Weik*, 78 Md. 439. In *Layman* v. *Conrey*, 60 Md. 286; and in *Dalrymple* v. *Gamble et al.*, 68 Md. 523, the principle here stated is fully recognized and applied. In the latter case the Court said: "A good deal was said in argument as to the relations which existed between the testator and this legatee, but assuming them to be as reprehensible and as immoral as they have been pictured, still such immoral conduct, of which they were both equally guilty, did not deprive him of the power of making a will in her favor, nor her of the right to receive whatever property that will gave her."

It would be a great inconsistency and absurdity to accord to a testator the power to dispose of his estate in any way he may think proper, consistent with the settled principles of the law, and at the same time say that this will may be annulled, if it appears that its disposition is unjust, inequitable, or unaccountable. The effect of such a principle would be the practical denial of the free right of testamentary power in a very large class of cases.

The appellant places her main reliance upon the cases of *Dean* v. *Negley*, 41 Pa. St. 312; and *Reichenbach* v. *Ruddach*, 127 Pa. St. 593. It is to be noted that these cases are not in harmony with the general current of authority upon the question we are considering. In 29 *Amer. & Eng. Ency. of Law*, 131, the rule as to the weight to be given to the fact of illicit relations shown to have existed between the testator and the legatee is thus stated: "While undue influence is more readily imputed where the beneficiary under a will is a mistress of the testator than where she is his wife, and while such illegitimate relation is a circumstance proper for the jury to consider, particularly where there is evidence that the testator's capacity is impaired, still there is generally held to be no presumption of undue influence arising from such relation merely, though there is authority that the mere existence of the unlawful relation justifies a verdict against the validity of

the will." The author states that this is the prevailing rule in at least eleven States of the Union.

The exception to the general rule is to be found in the two Pennsylvania cases cited by the appellant. It is true that in *Dean* v. *Negley, supra,* where it was shown that the testator was living in open adultery with a woman to whose children he devised the bulk of his estate; and where it was shown that the testator was suffering from a cancerous disease and an impaired mind; and where numerous acts of undue influence were shown to have been exercised upon him by the woman with whom he was living as his mistress, the Court held that the facts of the adulterous relation taken in connection with the devise to the daughters of the adulteress was "evidence of an undue influence exerted by her over the testator and affecting the dispositions of his will, and that it may justify a verdict against the validity of the will."

But in *Wainwright's Appeal,* 89 Pa. St. 220, the Court declined to follow this broad rule. In Wainwright's case the Court, speaking through CHIEF JUSTICE SHARSWOOD, said: "In an issue of *devisavit vel non* on the allegation of undue influence by the mother of an illegitimate child, the legatee in the will, the unlawful cohabitation of the mother with the testator is not of itself sufficient evidence from which the jury could infer undue influence. *Rudy* v. *Ulrich,* 69 P. F. Smith, 177. It is true that if there are other facts, unlawful cohabitation may be a circumstance of weight." In *Johnson's Appeal,* 159 Pa. St. 630, the evidence tended to show the testator devised nearly one-half of his estate to a woman with whom he had unlawful relations at the time he executed the will. The Court said: "The contention of the appellants necessarily rests upon the proposition that the existence of an unlawful relation between the testator and Mrs. Russel is sufficient alone to raise a question of undue influence, and to carry the question to the jury. That such is not the law was expressly decided by this Court in *Rudy* v. *Ulrich,* 69 Pa. St. 177; *Main* v. *Rider,* 84 Pa. St. 217; and *Wainwright's Appeal,* 89 Pa. St. 220. In the former of these cases *Dean* v. *Negley,* 41

Pa. St. 312, was distinguished as resting upon the peculiarity of its own facts.''

In *Smith* v. *Henline*, 171 Ill. 196, it is said ''The existence of an illicit relation between the deceased testator and his mistress will not give rise to a presumption of undue influence as a matter of law, but undue influence is more readily inferred in the case of a will made in favor of a mistress than in the case of a will in the favor of a wife. The existence of the relation is a circumstance to be considered by the jury along with the other facts in the case.  *  *  *  The jury have a right to consider the fact of the unlawful relation where there is proof, as there is in the case at bar, tending to show restraint and interference, impaired mental capacity, loss of will power, and sickness or disease at the time of the making of the will.''

The jury could not have lawfully concluded that the will was procured by undue influence from the mere fact that he gave all his property to the appellee with whom the evidence shows he had been guilty of adultery. He had a legal right to give her his property. He had full capacity to make a will; he was many miles distant from the appellee when he made it; it was made more than five years before his death, and he made no change in it, although he had ample opportunity to do so, and the fact he did not change it is evidence that he was satisfied with its provisions. The disposition of his property is unnatural, and it is much to be regretted that no provision was made for this aged and dependent sister; but the Court cannot aid her without unsettling the fixed principles of law. The testator undoubtedly had an unlawful attachment to this appellee, and resorted to deceit and duplicity to obtain the possession of the will which he had made in 1897 in order that he might destroy it.

We have examined the record carefully, and the most we are able to say is that the will is the product of the improper affection entertained by the testator for Mrs. Krumm. But this is not undue influence sufficient to avoid the will, as that term is understood in the law. The language of the Court in

*Sunderland* v. *Hood*, 84 Mo. 297, may well be applied to this case: "Many wills are made which ought not to have been made. Testators are always under some improper influence when the proper objects of their bounty are in no way provided for in their wills. A father who disinherits a worthy and needy son, or daughter has a right, but must be prompted by some improper influence to do so. He may have formed an attachment for strangers stronger than that for his children, which should not exist, but the law does not prevent him from gratifying his whims, or caprice in the testamentary disposition of his property."

There are two exceptions to testimony taken by the appellant. These exceptions are not referred to in the brief of the appellant's counsel, and were practically abandoned in this Court. The testimony of Edward E. Hutzell was properly stricken out, as it had not the remotest bearing upon the issues. The witnesses to the will being dead, and the appellee having complied with the requirements of section 346, Article 93 of the Code, there was no error in the ruling on the first exception, and the evidence objected to was properly admitted.

Finding no error in any of the rulings, they will be affirmed.

*Rulings affirmed and cause remanded.*