ALEXANDER T. WHITE

*vs.*

MARTHA E. SNYDER and FORREST BRAMBLE,
Executors of Ebenezer T. White.

*Wills: caveat; "undue influence." Prayers: too general; when*
*not reversible error.*

In order to justify submission to a jury of the question of
undue influence, it is necessary that there be some legal evidence
from which it might be rationally inferred that at the time of
making his will the testator was under the domination of an
influence which prevented the exercise of his own judgment.

p. 400

The influence which the law condemns as *undue,* is that which
operates to such a degree as to amount to coercion.        p. 400

The term does not include the influence of affection or attach-
ment, nor the mere desire of gratifying the wishes of another.

p. 401

A prayer, " that as to each and all of the issues presented in
the case, the finding of the jury must be in favor of the defend-
ants," is too general.                                    p. 402

But such a prayer does not present any reversible error, in
a case where there is no evidence legally sufficient to support
the plaintiff's theory as to any of the issues.            p. 402

To insert in the record the entire stenographic report of the
evidence, is in most cases contrary to the rule of the Court
of Appeals, codified as section 10 of Article 5 of the Code of
Public General Laws, which requires that the statement of evi-
dence included in bills of exceptions shall be condensed as much
as may be compatible with the due presentation of the rulings
to be reviewed.                                           p. 403

The discretion of the Orphans' Courts to award costs, in cases of plenary proceedings, or of issues sent to a court of law, extends to the costs in the preparation of the record for the Court of Appeals.　　　　　　　　　　p. 403

*Decided December 5th, 1914.*

Appeal from the Baltimore City Court.　(GORTER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*William Colton,* for the appellant.

*Randolph Barton, Jr.,* and *Forrest Bramble,* for the appellees.

URNER, J., delivered the opinion of the Court.

The question to be determined on this appeal is whether the evidence in the record is legally sufficient to show that the will in controversy was procured by undue influence. There were other issues involving the validity of the will, but the only ruling we are asked to review refers to the question just indicated. A verdict was directed in favor of the defendants upon all the issues.

The testator was Ebenezer T. White, a resident of Baltimore, who from an early age had been in the service of the Baltimore and Ohio Railroad Company, and at the time of his death was its superintendent of motive power. His will was executed in his office at Camden Station in March, 1913. He was then fifty-four years of age. While his health at that period was beginning to fail, there was no impairment of his mental faculties, and he was in the active and regular performance of his responsible duties. During the following

summer he was given a leave of absence, and, in company with two nieces, who were living with him at the time, made a visit to Europe. He returned with his health apparently much improved, but in September of the same year he was taken suddenly ill and died.

Mr. White was never married. His nearest surviving relatives were a brother, Alexander T. White, the caveator, who has been engaged for many years in the work of a mining prospector in the far west; three sisters—Mrs. Stephens, residing in Virginia; Mrs. Spears, in Pennsylvania, and Mrs. Weir, in Indiana; a nephew and two nieces, children of a deceased brother, William White; and a nephew and five nieces, children of a deceased sister, Mrs. Snyder. The nephews and nieces are also non-residents of Maryland, except two of Mrs. Snyder's daughters, Ella and Cora, who are unmarried and have been living in the home of their uncle, the testator, in Baltimore since 1907.

The estate passing under the will is valued at approximately $62,000.00. There are bequests of $500.00 to Mrs. Stephens, $200.00 each to Mrs. Spears and Mrs. Weir, and $100.00 each to Daisy White, daughter of the deceased brother, William, and to the three married daughters of the deceased sister, Mrs. Snyder, after which there is a devise of the testator's home property, appraised at $2,000.00, to Ella Snyder, and the residue of the estate is given to his two nieces, Ella and Cora Snyder, in equal shares.

The testator's home in Baltimore was established about 1890, and from that time until 1905 he and his mother were its only occupants. In the latter year Mr. White's sister, Mrs. Stephens, came to the home with her family at his request, in order to aid in caring for their mother, who had been injured by a fall. After the mother's death in 1906, Mrs. Stephens and her family continued to live with Mr. White until June, 1907, when he provided for them a home, to which they moved, in Winchester, Virginia. This change was made for the benefit of Mrs. Stephens' invalid husband,

and because they wished to be located where they could have sufficient ground for a garden and for raising poultry. The property was bought by Mr. White at a cost of $4,200.00, and was conveyed to his sister as a gift. Thereafter and until his death he contributed $400.00 each year towards her support. While Mrs. Stephens was preparing to remove from Baltimore the question was discussed as to who should take her place in keeping house for her brother. It occurred to him that his niece, Ella Snyder, who was teaching school in West Virginia, might be willing to come, and he accordingly wrote her on the subject. His invitation was accepted by Miss Snyder upon condition that she be allowed time to finish some special work she had undertaken. This required about six weeks for its completion, and she then came, with her younger sister, to their uncle's home, where they have since remained.

It is insisted that the will under inquiry is grossly unjust and unnatural in its provisions because it bestows so large a proportion of the estate upon the two nieces and thus discriminates against other relatives who are said to have special claims to the testator's bounty. The charge of undue influence in the procurement of the will is directed against Miss Snyder, and is sought to be supported by testimony to which we will presently refer.

After a careful study of the evidence as to the testator's situation with respect to those who might be considered in connection with the disposition of his estate, we are unable to see any such injustice in his will as would excite suspicion as to the circumstances under which it was executed. The two principal beneficiaries under the will are those in whom his interest was most completely centered. They were the children of his deceased sister and lived with him upon terms of the most intimate companionship, and they evidently held the same place in his affection as if they had been his own daughters. The brother, who has filed the caveat, is a bachelor, with adequate sources of income, and it is not argued

that he, or any of the other male relatives, had reason to
expect any substantial recognition in the will.    There is,
moreover, no special complaint made of the testator's failure
to provide more generously for his sister, Mrs. Weir, and
for his other nieces, as his relations with them had not been
marked by any particular intimacy.    But it is urged that in
bequeathing such relatively small amounts to his sisters, Mrs.
Stephens and Mrs. Spears, the will is conspicuously unjust.

It is in evidence that Mrs. Spears is an invalid and a
widow, but she has four adult sons, whose ability to care for
their mother may have been taken into consideration by the
testator.    The testimony shows that Mrs. Stephens, because
of her husband's disability, was dependent for their support
upon her own efforts.    Her situation appears to have been
fully appreciated by her brother, and his intention to pro-
vide for her appears from proof of his declarations to that
effect.    The purpose thus expressed was at least partially
accomplished by the purchase of the home for Mrs. Steph-
ens, and by the annual contribution for her support, to which
we have referred.    It may be that this liberality of Mr.
White towards his sister in his lifetime, indicating as it did
his realization of her circumstances, would give rise to a
natural expectation of a larger bequest in her favor than the
will actually contains.    But it is apparent from the record
that the testator's paramount concern was for the nieces he
had taken into his home and whose presence there had cheered
and brightened his life.    It was his desire that they should
be enabled to maintain after his death the home upon which,
at his instance, they had become dependent, and he doubtless
estimated that the income from the estate he was giving
them by his will would be required for that purpose.    The
deep-seated affection and sense of obligation which prompted
such a testamentary disposition would seem to be sufficient
to relieve it of the imputation that it is unnatural or essen-
tially unfair.

The evidence in the record does not in our judgment tend to sustain the charge of undue influence. It shows that Miss Snyder was rather excessive in her manifestations of affection for her uncle; that she spoke of her ability to influence his judgment by her advice in reference to investments, and of the fact that certain gifts which he made to relatives had been reduced in amount at her suggestion; that she had entire management of the house, opened her uncle's mail, and had authority to fill up checks which he would sign in blank. The record is too voluminous to admit of more than a general reference to this feature of the case. It must be sufficient for the purpose of this opinion to state our conclusion upon the evidence that, while it shows the testator to have had the most implicit confidence in his niece, and to have been quite responsive to her advice and suggestions, there is nothing in the proof to warrant the inference that she took any improper advantage of her position or that her influence controlled her uncle's judgment and volition in the final disposition of his estate. It is agreed by all the witnesses that Mr. White was a man of strong personality. The evidence as to the character of the testator and as to the circumstances under which his will was made is inconsistent with the theory that it was not his free and voluntary act.

In order to justify the submission to the jury of the issue we are considering it would be necessary to find in the record some evidence from which it might be rationally inferred that at the time of making his will the testator was under the domination of an influence which prevented the exercise of his own judgment. The influence which the law condemns as undue is that which is operative to such a degree as to amount in effect to coercion. *Kennedy* v. *Kennedy,* 124 Md. 38; *Dudderar* v. *Dudderar,* 116 Md. 605; *Saxton* v. *Krumm,* 107 Md. 399; *Kennedy* v. *Dickey,* 100 Md. 162; *Somers* v. *McCready,* 96 Md. 438; *Hiss* v. *Weik,* 78 Md. 446; *Grove* v. *Spiker,* 72 Md. 301; *Stirling* v. *Stirling,* 64 Md. 151; *Zimmerman* v. *Bitner,* 79 Md. 128; *Davis* v. *Cal-*

*vert,* 5 G. & J. 269. It has been held to be proper to instruct the jury in cases where an issue like the present is left to their consideration, that "the influence which will avoid a last will and testament must be exerted to such a degree as will amount to force or coercion destroying free agency. It must not be the influence of affection or attachment, nor the mere desire of gratifying the wishes of another, for that would be a very strong ground in favor of the testamentary act, and there must be some satisfactory proof that the instrument offered in evidence as the last will of the decedent was obtained by the character of coercion above mentioned or by importunities which could not be resisted, so that the motive for executing the will amounted to force or fear." *Layman* v. *Conrey,* 60 Md. 286; *Higgins* v. *Carlton,* 28 Md. 115; *Dudderar* v. *Dudderar, supra; Thomas* v. *Cortland,* 121 Md. 677. The proof before us wholly fails to meet the requirement of the rule thus declared.

In the argument for the appellant great reliance was placed upon the cases of *Hiss v. Weik* and *Grove v. Spiker, supra,* in each of which the issue of undue influence was submitted to the jury, and in which it was said by this Court, in the opinion delivered in each instance by JUDGE McSHERRY, that "The results accomplished in a given case, the divergence of those results from the course which would ordinarily and naturally be looked for, the situation of the party taking benefits under a will towards the person who has executed it, and their antecedent relations to any dealings with each other, the legitimate, but unrecognized claims of others upon the bounty of the testator and their dependence upon him, the instincts of justice of which every unbiased mind is sensible, the natural ties of parental affection, together with all the circumstances surrounding the transaction under investigation, and the inference legitimately deducible from them, often furnish, in the absence of direct evidence (which from the very nature and secrecy of the wrong itself, is rarely obtainable) ample ground for the conclusion that undue

influence has been used to accomplish an end which may be gross in its injustice, and whose very existence cannot be satisfactorily accounted for, except upon the hypothesis that undue influence has produced it." This is a very clear and comprehensive statement of considerations which were appropriate to the cases in which the language quoted was employed. In *Hiss* v. *Weik* the will in dispute, as stated in the opinion, "absolutely cut off an insane son upon whom a motherless and helpless child was dependent and gave to an invalid daughter a mere pittance out of a large and valuable estate," and there were facts tending directly to support the theory of undue influence, while in *Grove* v. *Spiker* the testatrix was "a feeble-minded, inexperienced and secluded old woman," and the will in question ignored her next of kin and left the bulk of her estate to a stranger in blood who had acquired dominion over her by "alternately winning her confidence and exciting her fears." No conditions at all analagous to these are disclosed by the present record.

The question we have considered is raised by the plaintiff's exception to an instruction: "That as to each and all of the issues presented in this case the finding of the jury must be in favor of the defendants." The objection that this instruction was too general is, of course, well founded, *Bassett* v. *Ocean City,* 118 Md. 118; *Pearre* v. *Smith,* 110 Md. 537; *Palatine Ins. Company* v. *O'Brien,* 107 Md. 357; but the plaintiff was not prejudiced by this error, as there was no evidence legally sufficient to support his theory as to any of the issues and the defendants were entitled to have a verdict directed in their favor on that ground.

There is included in the record a certificate of the trial judge to the effect that the bills of exception as originally prepared by the plaintiff, and which he claimed to be sufficient for the presentation of all the material facts to this Court on appeal to enable it to pass upon the rulings excepted to, were about one-fourth of the volume of the bills of exception as eventually signed and incorporated in the record, and that over the plaintiff's objection, at the request of the defend-

ants, the bills of exception were required to embrace the whole of the stenographic report of the testimony, as taken by question and answer, at the trial, and that this fact was certified so that it might be known to the Court of Appeals when it came to decide as to the disposition of the costs.

A rule of this Court, which has been codified as section 10 of Article 5 of the Code of Public General Laws, provides for reducing the costs of appeals by requiring that statements of evidence included in bills of exception shall be condensed to such extent as may be compatible with the due presentation of the rulings to be reviewed. The insertion in the record of the entire stenographic report of the evidence is in most cases unnecessary and contrary to the purpose of the rule. In the trial below there was no evidence offered by the defendants, and the only ruling to be questioned on appeal related to the legal sufficiency of the plaintiff's proof. There is no reason apparent to us why an abridged statement of the testimony in chief and on cross-examination could not have fully and clearly presented the question we have to decide. In our opinion the bills of exception could have been greatly reduced in volume, as desired by the appellant, without prejudice to either side of the case. But while we think it proper to make this expression in view of the special certification in the record on the subject, we must leave the disposition of the costs to the Orphans' Court, to whose judgment that question is committed by law and established practice. Code, Article 93, sec. 255; *Conrades* v. *Heller,* 119 Md. 462; *French* v. *Washington County Home,* 115 Md. 315; *Johns* v. *Hodges,* 60 Md. 215; *Levy* v. *Levy,* 28 Md. 25.

*Rulings affirmed.*