The principal question in this case is whether the evidence is legally sufficient to prove that the will of William F. Airey, of Baltimore, who died on January 5th, 1920, was procured by undue influence. The will was executed on August 5th, 1918. It disposes of an estate of the approximate *Page 356 
value of $200,000. After providing for the payment of forty dollars monthly to his housekeeper, Beulah Redmond, during her lifetime, and bequeathing $100 to a former employee, $1,000 to the Caroline Street Methodist Episcopal Church, to be known as the "Airey Fund," and various articles to some of his cousins and nephews, the will devised and bequeathed all the residue of the estate to the Young Women's Christian Association of Baltimore City, a body corporate, in trust to invest the corpus and all income derived therefrom until the combined corpus and income should amount to $200,000, and thereafter to apply the income to its corporate purposes. It was directed that the corpus of the trust estate, when augmented to the amount stated, should be kept intact and should be known as the "William F. Airey Endowment Fund." A request was made in the will that a simple service be held each year by the association on the anniversary of the testator's birth.
At the time of the execution of his will Mr. Airey was eighty years of age. While his health was impaired it is conceded that he was then mentally capable of making a valid deed or contract. It does not appear by whom the will was drafted. It was executed at the office of an insurance company, to which Mr. Airey went unattended, and where he signed the will in the presence of two of the officials of the company, who, at his request, subscribed their names as witnesses.
Mr. Airey was never married. His next of kin and heirs at law are a sister and five nephews and nieces. The pending caveat was filed by the sister, Mary E. Watson, who was later joined in the proceeding by William C. Airey, a nephew, and Emma Rhodes, a niece, of the testator. Issues involving the questions of mental capacity, undue influence, and the formal execution of the will, were transmitted to the Superior Court of Baltimore City. The trial there resulted, at the close of the plaintiff's case, in a directed verdict for the defendants on all the issues, the instructions to that effect *Page 357 
in reference to the issues of mental capacity and due execution being conceded. There are three exceptions to the exclusion of proffered evidence and one to the withdrawal of the issue of undue influence from the jury.
The general theory upon which the will has been contested is that Miss Redmond, the testator's housekeeper, was unfriendly to his relatives and unduly influenced him to discriminate against them in the disposition of his estate, and that the activities of the president and secretary of the Young Women's Christian Association accounted for the gift of nearly the whole estate to that institution.
There is no evidence in the case that the officers of the association ever made any effort to influence Mr. Airey in regard to his will or ever made any suggestion to him on that subject. It may be inferred that they naturally and properly sought to enlist his interest in the philanthropic organization which they represented. But the record is wholly devoid of any evidence which could justify the inference that the will, or any of its provisions, was the product of their influence, or even of their advice.
The testimony shows that Mr. Airey's attitude towards his kindred was affectionate and generous. There were frequent indications of his interest in their welfare. It was testified that he had expressed a purpose to make substantial provision by his will for the three caveators. In 1914 he mentioned $20,000 as the amount intended for his sister, Mrs. Watson, but indicated that the provisions for his nephew, William C. Airey, and his niece, Mrs. Rhodes, would not be so large. It does not appear to have been his intention at any time to leave a considerable proportion of his estate to his relatives. The purpose to devote the greater part of it to some form of philanthropy had evidently existed in his mind for a long period. Many years before his death he referred to an institution engaged in an important service of that nature to which he proposed to "leave his money." The provisions of his will clearly reveal a desire to create for himself *Page 358 
a memorial by devoting his estate mainly to the establishment of an endowment fund, bearing his name, for the use of a great benevolent organization in the city where he had spent all the years of his long and active life. The amount of the fund he wished to provide for that purpose was $200,000, and the income from his residuary estate was directed to be added to the corpus until that total was produced. In providing for the early accomplishment of that result the testator gave less consideration than might have been expected to the interests of his relatives as probable objects of his bounty. Whether there is legally sufficient evidence to prove that such a disposition of the estate was occasioned by undue influence is the question to be determined.
The testator's housekeeper, Miss Redmond, who is charged with having unduly influenced him in reference to his will, had been a member of his household for a period of fourteen years. She was originally employed as a house girl to assist Mr. Airey's aunt, who lived with him until her death in 1907. Afterwards Miss Redmond performed all the domestic service required in the home, except for occasional help in the house cleaning. Her compensation was forty dollars per month during the latter period of her employment, and that is the measure of the benefit which she receives under the will. This appears to be a very moderate provision in view of the grateful appreciation of her kind and faithful services which Mr. Airey repeatedly expressed. If she was able to exert a controlling influence over him, it was certainly restrained so far as her own interests were concerned. The theory that, having such an influence, and declining to use it for her own advantage, she nevertheless employed it for the purpose of depriving the caveators of a share of the estate, pre-supposes a degree of animosity towards them which the evidence does not tend to prove. One of the caveators testified to statements by the testator to the effect that Miss Redmond was opposed to his giving anything to his relatives, that she had spoken of their visits to him *Page 359 
as being prompted by a desire to get some of his money, and that he did not wish her to know of his gifts to them on various occasions. But the proof is that when Mr. Airey purchased a small farm at a cost of $3,500 for his niece, Mrs. Rhodes, a short time before his will was executed, Miss Redmond was present and aided at the completion of that transaction. Mrs. Rhodes testified that Miss Redmond's treatment of her was kind. It is not shown that Mr. Airey was ever deterred by his housekeeper from making gifts to his kindred. His frequent donations to them were apparently made in the exercise of his own judgment and volition. The evidence shows him to have been a man of positive will and character.
In the year 1906 the testator's sister came to live with him at his invitation, but after remaining a few months she left his home, mainly because her relations with his aunt were not agreeable. Since that time she has seen her brother only once, and that was on the occasion of the aunt's funeral in 1907. After her departure from his home Mr. Airey sent her regular monthly contributions for several years. During the eleven years preceding the execution of his will their communications had wholly ceased. Two of the three nieces, who are numbered among his next of kin and heirs at law, had not seen him since 1910, and one of his two nephews, a man of mature age, had only seen his uncle five or six times in his life. The only relatives who appear to have visited him with any frequency during his latter years were his niece, Mrs. Rhodes, and his nephew, William C. Airey. To the former he gave the property already mentioned, but the latter received from him only gifts of money in small amounts.
It was the right of the testator to dispose of his estate according to his own judgment. He was mentally capable of making his will and, if it was not the product of undue influence, the processes of the law will not interfere to render it nugatory on the ground that it disappoints expectations *Page 360 
which may have been entirely reasonable. Undue influence has been often defined in the decisions of this Court. It is influence exerted upon the testator to such a degree as to have the effect of force or coercion by which his free agency is destroyed.White v. Bramble, 124 Md. 400; Kennedy v. Kennedy,124 Md. 43; Thomas v. Cortland, 121 Md. 677; Dudderar v.Dudderar, 116 Md. 605; Saxon v. Krumm, 107 Md. 399;Kennedy v. Dickey, 100 Md. 162; Somers v. McCready,96 Md. 438; Zimmerman v. Bitner, 79 Md. 128; Hiss v. Weik,78 Md. 446; Grove v. Spiker, 72 Md. 301. The evidence in this case does not tend to prove the exercise of an influence which deprived the testator of his independent volition in the making of the will in controversy. It reflected his long existing design as to the general nature of the object to which the greater part of his estate was to be finally devoted. There was a departure from his former intention to make provision in his will for the caveators, but there is nothing in the evidence to justify the conclusion that this change was the result of coercion. In the testimony as to the statements of the testator expressing a purpose to provide for those relatives, he is quoted as declaring in effect his independence of the unfriendly attitude towards them attributed to his housekeeper. If she had possessed the power and disposition to unduly influence him, it is hardly conceivable that she would not have employed that power for her own benefit. The fact that no such influence was operative in her own favor points very strongly to the conclusion either that Miss Redmond had not the ability to control the testator's volition, or that her character was such as to preclude the practice by her of undue influence upon him for any purpose. The evident desire of the testator to provide as large an amount as possible for the endowment fund which was to bear his name may well account for his failure to gratify the caveators' expectations. The will is not so unnatural, under all the circumstances to which we have referred, *Page 361 
as to indicate that undue influence must have been responsible for its provisions.
The cases cited in the argument need not be discussed. They were decided upon their particular facts, which were materially different from those presented by this record. The law applicable to the case is not in dispute.
No reversible error has been found in any of the rulings by which certain evidence offered by the caveators was excluded. Part of it was introduced elsewhere in the testimony without objection, and if all of it had been admitted, it would not have affected our view as to the legal insufficiency of the evidence as a whole to support the issue of undue influence.
Rulings affirmed. *Page 362