WILLIAM E. LONGANECKER ET AL. *vs.* CORNELIA SOWERS ET AL.

*Wills—Undue Influence.*

Undue influence is that degree of importunity which deprives a testator of his free agency, which is such as he is too weak and too feeble to resist, and will render the instrument executed under its influence not his free and unconstrained act.
p. 587

The provisions of a will may be so unnatural and unjust as to require little additional evidence for a finding of undue influence.                    p. 588

On an issue of undue influence, *held* that there was not enough evidence extrinsic to the will to justify the submission to the jury of the question of undue influence.          p. 588

*Decided June 29th, 1925.*

Appeal from the Circuit Court for Washington County (WAGAMAN, J.).

Caveat proceeding by William E. Longanecker and Edward Arthur Longanecker, by his father and next friend, William E. Longanecker, against Cornelia Sowers and Emeline Garmong, caveatees, as regards an alleged will of Mrs. Lou K. Longanecker. From a ruling in favor of the caveatees, the caveators appeal. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE and WALSH, JJ.

*Alex. R. Hagner,* for the appellant.

*Elias B. Hartle,* with whom was *Jos. W. Wolfinger* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

This appeal is from the ruling of the trial court in a caveat to the will of Mrs. Lou K. Longanecker. The case was tried below on the issues of mental incapacity and undue influence. The caveators were William E. Longanecker, the husband of testatrix, and Edward Arthur Longanecker, by his father and next friend William E. Longanecker, and the caveatees were Cornelia Sowers and Emeline Garmong, sisters of the testatrix. Edward Arthur Longanecker was a legally adopted son of the testatrix and her husband.

At the conclusion of the caveatees' testimony the issue of mental capacity was withdrawn from the jury at the instance of caveatees, and at the conclusion of all the testimony the court granted caveatees' first prayer, which was for a directed verdict on the issue of undue influence, and refused the other prayers of caveatees and all the prayers of caveators. The only exception reserved was to the ruling of the court on the prayer at the conclusion of the case, no exception having been taken to the directed verdict on the issue of mental capacity.

The will in controversy was executed on the 24th day of October, 1923. It bequeathed to the adopted son one hundred dollars, and directed that the rest and residue of the estate be held in trust during the life of testatrix's husband for his use and benefit, and that after his death it be distributed to her two sisters Cornelia Sowers and Emeline Garmong, the caveatees in this case; and should either of them be deceased leaving no children at the time of the death of the husband, her share to go to the survivor; and should neither sister survive the husband, the children of the sister Emaline Garmong to take the entire estate. The sisters were named as executors "with full power and authority to sell the whole of my estate and reduce the same to cash, as soon as possible after the time of my death and to make distribution as herein directed."

The estate disposed of was estimated by the husband to be worth from $10,000 to $12,000. It was assessed for the purposes of taxation at $3,009. There was a mortgage against it of $3,000.

The property consisted of small houses and lots. It appears to represent the joint savings of the husband and wife, he having done much of the work in building the houses.

Mr. and Mrs. Longanecker had no children born to them. They adopted the boy, Edward, in 1915, when he was a baby, and raised him as their own child. He was about ten years old when Mrs. Longanecker committed suicide by hanging, on August 23rd, 1924. She appears to have been greatly attached to the boy, and solicitous about his future, remarking to one witness that she did not know what would become of him when she was gone, as they had nothing, and she didn't know who would look after him.

It does not appear that the sisters were in any way dependent, both having husbands.

The important and only question to be determined on this appeal is, bearing in mind the unnatural provisions of the will and in view of the situation of the testatrix: Is there in the will itself intrinsic evidence, in connection with the

facts and circumstances proved, enough to have required the issue of undue influence to be submitted to the jury?

Undue influence is that degree of importunity which deprives a testator of his free agency, which is such as he is too weak or too feeble to resist, and will render the instrument executed under its influence not his free and unconstrained act. *Davis v. Calvert,* 5 G. & J. 269. It is closely allied to, and in many of its aspects strongly resembles, actual fraud, and like the latter, when most cunningly executed is exceedingly difficult to unmask. The results accomplished in a given case, the divergence of those results from the course which would ordinarily and naturally be looked for, the situation of the party taking benefits under a will towards the person who has executed it, and the antecedent relations to and dealings with each other, the legitimate but unrecognized claims of others upon the bounty of the testator and their dependence upon him, the instincts of justice of which every unbiased mind is sensible, the natural ties of parental affection, together with all the circumstances surrounding the transactions under investigation, and the inferences legitimately deducible from them, often furnish, in the absence of direct evidence (which, from the very nature and secrecy of the wrong itself, is rarely obtainable), and often in the teeth of positive testimony to the contrary, ample ground for the conclusion that undue influence has been used to accomplish an end which may be gross in its injustice, and whose very existence cannot be satisfactorily accounted for, except upon the hypothesis that undue influence has produced it. *Grove v. Spiker,* 72 Md. 300; *Hiss v. Weik,* 78 Md. 439. On the other hand, it is fully recognized in *Hiss v. Weik, supra,* and by the authorities generally, that one having sufficient mental capacity to make a valid deed or contract, and not unduly influenced, may dispose of his property as he pleases, and that inequality and injustice alone, however gross they may appear to be, are not sufficient to annul a will. *Griffith v. Diffenderfer,* 50 Md. 466; *Layman v. Conrey,* 60 Md. 286.

Nor is it every influence that will avoid a will. In *Dudderar v. Dudderar,* 116 Md. 605, it was said that there was ample evidence that the defendant by persuasion induced his father, the testator, to exercise what was charged to be discrimination against two of his sons, the caveators, by the abatement of their shares in the manner indicated in the will, the caveatee contending that this was intended to effect an equalization by reason of previous transactions, but it was pointed out that this Court has consistently adhered to the principle that the only influence which will be held to be undue and to be sufficient to invalidate a will which it has affected is that which is urged to such a degree as to amount to force and coercion and to destroy the testator's free agency, citing a number of cases. And it was held in that case that the issue of undue influence should have been withdrawn from the jury. Attention was called to the differences between that case and the case of *Grove v. Spiker, supra,* and *Hiss v. Weik, supra,* in that among other things the will in the case then under consideration was without unnatural and unjust provisions, such as were found in the other cases referred to.

It may be said that *Grove v. Spiker* and *Hiss v. Weik* are representative of a class of cases where the provisions of the will were so unnatural and unjust as to require little additional evidence to establish a legal justification for the finding of undue influence, while *Dudderar v. Dudderar* represents a class where there is no intrinsic evidence in the will itself to cause suspicion of such influence and therefore a greater burden rests upon the caveator to establish it. The rule is the same in both cases, that is, the definition of undue influence; the difference is that in the first class the evidence inherent in the will itself makes less outside evidence necessary from which a deduction may be drawn.

The majority of the court holds that not enough evidence extrinsic to the will is found in the record to justify a submission to the jury of the question of undue influence, with which conclusion the writer does not agree.

We shall follow the practice adopted in *Stirling v. Stirling,* 64 Md. at p. 150, and in other cases decided by this Court, where it was said: "On a question of this sort, depending as it does entirely upon the evidence, no good result can possibly arise from a mere recapitulation of the evidence. It is enough for the court to announce the conclusion it arrives at."

*Ruling affirmed, and cause remanded.*