WILLIAM R. BOWERS ET AL. v. RICHARD KUTZLEB,
EXECUTOR.

*Wills—Undue Influence—Mental Capacity—Evidence.*

That shortly before testator's death he executed a deed of
trust for his own benefit for life, with remainder to the bene-
ficiaries named in his will, did not itself show undue influence
on the part of the trustee named, who was also named as execu-
tor in testator's will, executed a few days later, such trustee not
receiving anything under the deed except his commissions.
p. 314

That testator refused to sign the will when read to him,
assigning as his reason that his nurse had asked him to keep
quiet, and that he did sign it when advised by the nurse that
he could do so with safety, did not show that he was in a state
of fear as regards his attendants.                    p. 315

Evidence *held* not to show that a will was procured by undue
influence exercised by the person named as executor therein, an
intimate friend who had helped testator as regards his business
affairs, approximately all the estate being given to testator's
blood relatives.                                pp. 312-315

The exclusion of the will of testator's brother, offered to show
the extent to which testator's estate was derived from him, was
not cause for reversal, in view of other evidence in this regard,
admitted without objection or contradiction.          p. 316

On an issue as to the mental capacity of testator, a previous
will, executed by testator, at a time when he was indisputably
competent, was admissible to prove that the contested will was
in substantial conformity with testator's previous and formally
expressed purpose.                              p. 316

On issues as to mental capacity and undue influence, the
attorney who drew the will was properly allowed to testify as
to the instructions under which he prepared the will.    p. 317

Persons who had known testator for many years, who were
members of his household during the last two weeks of his

life, who observed and conversed with him daily during that period, and stated adequate grounds for their testimony, could properly testify that when he signed the will, two days before his death, he was capable of executing a valid deed or contract.

p. 317

On an issue as to undue influence exerted upon testator by the person named by him as executor, such person was properly allowed to testify that he had derived no financial advantage from a deed of trust by which he was named as trustee, executed by testator shortly before the execution of the will in question.

p. 317

*Decided December 10th, 1925.*

Appeal from the Baltimore City Court (DUKE BOND, J.).

Caveat proceeding by William R. Bowers and others, as to an alleged last will and testament of Frank K. Bowers, deceased, defended by Richard Kutzleb, named as executor in such alleged last will and testament. From rulings adverse to the caveators, they appeal. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Howard Bryant* and *Charles Harris Bryant,* for the appellants.

*Albert S. J. Owens* and *Edward D. Martin,* with whom were *Briscoe & Jones* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

The question of chief importance on this appeal is whether the record contains any legally sufficient evidence that the will of Frank K. Bowers, of Baltimore, was procured by undue influence. The trial court granted an instruction withdrawing that issue from the jury. An issue as to the mental capacity of the testator was submitted to the jury, and they decided that he was competent to execute a valid will.

The testator died on January 28th, 1923. He was then sixty-seven years of age. His wife had died about two weeks previously. He had no children or descendants, and his only next of kin were nephews and nieces. The estate passing under his will approximates in value $23,500. It is almost wholly devised and bequeathed to the relatives who would have been entitled to receive it if he had died intestate. The devises and legacies of the nephew and four nieces who are contesting the will nearly equal the interests which would accrue to them in the estate if the will should be vacated. They insist, however, that the will was not the testator's voluntary act, but was the product of undue influence, exerted upon him by the appellee, Richard Kutzleb, who is named therein as executor.

The will is dated January 27th, 1923, but is convincingly proved to have been executed on the 26th, two days before the testator's death. It was prepared by Mr. Albert S. J. Owens, in accordance with a memorandum brought to him by Mr. Kutzleb, which directed him to repeat the provisions of an earlier will, except those creating a life estate for Mr. Bowers' wife and appointing her executrix, which were omitted because of her recent death, and to include a bequest of $1,000 for Mrs. Ella B. Baxter, a cousin of Mrs. Bowers, and to prorate the residue of the estate among all of the legatees, except Mrs. Baxter, and to name Mr. Kutzleb as executor and as legatee of a large framed photograph of the testator. The bequests reproduced in the new will from the previous one, which had been executed in 1921, were of sums ranging from $250 to $1,500, and aggregating $6,250, apart from the apportionment of the residuary estate, and the legatees were the children of the testator's deceased sisters and brothers, a grandchild of one of his deceased sisters, and the cousin, already mentioned, of his wife. Mr. Kutzleb, the executor, was a friend who had assisted Mr. Bowers in the management of his business affairs during the period of his declining health. When the will in controversy was signed, the testator's physical condition was critical, but his mental

faculties, as the witnesses to the transaction testified, and as the jury found, were sufficiently clear to understand, intend, and validly accomplish the testamentary act.

In describing the circumstances under which the will was executed, Mrs. Farringer, the testator's nurse, and one of the attesting witnesses, testified: "Well, Mr. Kutzleb came upstairs and read the will to Mr. Bowers. After the will was read Mr. Bowers said, 'Everything is satisfactory, Brother Kutzleb,' which he always called him, and Mr. Kutzleb said, 'Are you ready to sign the will?' He said, 'No, I don't think I am.' So they left the room, Mr. Kutzleb and Dr. Kasten and Mrs. Skinner, and I stayed with Mr. Bowers. I went to the side of the bed, and I said, 'Mr. Bowers, is there anything wrong that you did not sign your will?' He said, 'No, Miss Florence, you asked me to keep myself quiet, and I was afraid if I would sign the will and exert myself you would be angry.' I said, 'No, everything will be all right, you can sign it,' and I called Mr. Kutzleb; I propped him in the bed. Mr. Kutzleb stood at the back of the bed, that is, supporting the pillows. And Mr. Bowers signed his own will and I did not guide the pen * * *."

Doctor Kasten, the other attesting witness to the will, testified in part as follows: "Q. Can you state the circumstances of the signing of that will? A. I was sent for. Mrs. Skinner came for me, living next door, and asked me to come over to witness the will. When I came in Mr. Bowers was sitting, half sitting up, in bed, or sitting up in bed. Mr. Kutzleb was standing there reading a will to him, and after he read the will Mr. Bowers said it was all right, or something to that effect. As I came in I spoke to him, called him. He spoke to me and said, 'How are you, Doctor.' And I said, 'How are you, Frank.' And the will was signed, Mr. Kutzleb assisting Mr. Bowers, not by writing, but by holding him up, by holding the will in front of him. After the will was read, by the way, he answered him and said that will was correct."

The evidence upon which the caveators mainly rely as

proof of undue influence is that some time in 1921 the testa-
tor, in conversations with Mr. J. LeRoy Hopkins, who was
then acting as his legal advisor, complained that Mr. Kutzleb
was urging him to transfer certain ground rents and mort-
gages to Mrs. Bowers, and stated his willingness to do this,
"in order to get peace," and that, in regard to his desire to
give his fountain pen business to the employee in charge,
Mr. Bowers told Mr. Hopkins that Mr. Kutzleb was "inter-
fering with his wishes," and seemed to be "running every-
thing," and that he did not want Mr. Kutzleb "mixed up in
his affairs after his death," as the executor of his will. The
mortgages and ground rents were in fact transferred to Mrs.
Bowers, upon the understanding that she and her husband
would make wills with a view to having the property vest in
the survivor. Prior to the death of Mrs. Bowers, the mort-
gages, amounting to $17,600, were discharged by payment,
except a balance of $2,600 due on one of them, and about
$13,000 of the money so paid is now a part of Mr. Bowers'
estate, as the result of its deposit in bank accounts entered
to the joint credit of himself and his wife. The unpaid
mortgage is now also included among the assets left by the
testator, though the manner of its reversion to his estate is
not disclosed by the record. The eventual disposition of the
assigned ground rents, estimated to be worth $4,600, has not
been proved.

Notwithstanding the unfavorable remarks quoted by Mr.
Hopkins as having been made in 1921 by Mr. Bowers in
regard to Mr. Kutzleb, the uncontradicted evidence shows
that their subsequent relations were intimate and cordial
during the remainder of the testator's life. The only inter-
est which Mr. Kutzleb appears to have been manifesting in
the affairs of Mr. Bowers, at the period of the remarks quoted
by Mr. Hopkins, was shown in his advice against the gratu-
itous disposal of the pen business, and in favor of the trans-
fers to Mrs. Bowers, which were probably recommended
because her husband's health was then declining. The rela-
tions between Mr. Bowers and his wife appear to have been

of the most affectionate nature, and there is no ground in the evidence for a suspicion that, in advising the assignments to her, Mr. Kutzleb was prompted by any thought of opposing the interests of other persons who might be considered proper objects of Mr. Bowers' testamentary bounty. Because of his physical disabilities he needed assistance in caring for his business and financial affairs. As a man of practical business experience, Mr. Kutzleb was well qualified for the service of that nature which the testator required. He and Mr. Kutzleb were both members of the Masonic Order and had been on terms of warm friendship for many years. It was natural that Mr. Bowers should have requested and received from Mr. Kutzleb such friendly and helpful aid as the testimony shows he actually rendered. It is impossible to believe that his expressions of impatience at Mr. Kutzleb's advice in 1921, as quoted by Mr. Hopkins, represented his permanent feelings toward the friend whose services and attentions he continued to accept, and to whom he afterwards repeatedly referred in terms of high regard and grateful appreciation.

A witness, who has no pecuniary interest in the case, testified as follows: "Q. Did you ever hear Mr. Bowers make any complaint about Mr. Richard Kutzleb? A. He was very, very fond of him, and his wife, too, and daughter and son. Q. Did you ever hear him make any complaint about him? A. Never. He was always anxious for him to come. Even on Saturday night he made the remark, 'I hear the sport downstairs.' He used to call Mr. Kutzleb a sport. That was the Saturday night before he died." Another witness testified: "Q. Did you ever hear Mr. Bowers say anything to you about Mr. Kutzleb? A. The very highest terms. Q. Can you state when he said it and what he said? A. Well, he averaged it most every few days, from the time of Mrs. Bowers' death until his own death, that Mr. Kutzleb was the best friend, the truest friend he ever had, that he had been loyalty itself to him in all business affairs and in every way."

There is nothing in the conduct of Mr. Kutzleb, as described in the testimony, to indicate that he sought to ingratiate himself with the testator or was actuated by any ulterior purpose in visiting and assisting him as a friend and fellow Mason. If his motive had been one of self-interest, he would doubtless have used his opportunities with greater advantage to himself than the will reveals, in its single bequest to him of the testator's photograph, and in the executorship to which he was appointed.

About a week before Mr. Bowers' death, he executed a deed of trust conveying all of his property to Mr. Kutzleb for the grantor's benefit for life and in remainder for the persons entitled to his estate under his last will and testament. The execution of this deed, placing the grantor's property wholly under the control of Mr. Kutzleb, is said to show the influence and authority which he was then able to exert over the grantor. As Mr. Kutzleb was to receive nothing under the deed except the commissions which he would earn by the service he was to perform, and as the trust was entirely for the benefit of the grantor, and subject to the dispositions in his will, the trust conveyance can hardly be regarded as in itself an evidence of the grantor's subjection to undue influence on the part of the trustee.

One of the caveators and his wife testified that they were in the home of Mr. Bowers on the evening of January 15th, 1923, and that he was led upstairs to bed, apparently against his wishes, by Mr. Kutzleb and another of the persons present. This incident is mentioned as an illustration of Mr. Kutzleb's control over the testator's volition. It had been suggested by some one that it was Mr. Bowers' bedtime, and for that reason he was taken upstairs. His wife had died that day, and he was ill and distressed. His objection to retiring was that he had "company." It is a reasonable inference that, in overruling this objection and in leading him to his bedroom, his friends were prompted solely by concern for his own comfort and welfare.

An inference favorable to the theory of undue influence

is said to be supported by the testimony of the nurse, to the effect that when Mr. Bowers, after the will had been read to him, was asked whether he was ready to sign it, he answered in the negative, and afterwards, in reply to the nurse's inquiry as to his reason for not signing, said that she had asked him to keep quiet and he was afraid that, if he exerted himself, she would be angry. This is supposed to show that Mr. Bowers was in a state of fear resulting from a dominating attitude on the part of his attendants. But the natural significance of the incident does not justify such an inference. It was probably because of his appreciation of the nurse's interest and attentions that he was unwilling to disregard her caution against exerting himself, and to proceed, in his weakened condition, with the execution of the will, until he had her advice that he could do so with safety. Upon receiving that assurance, he signed the will without hesitation.

So far as the dispositions of the testator's estate are concerned, there is no suggestion that the will does not express his voluntary purpose. No criticism is directed against any of the bequests as being the product of undue influence. All of the estate is given to the testator's blood relatives except $1,000, which is bequeathed to his wife's cousin, who assisted in caring for him in his illness. The designation of the executor was natural and logical, under all the circumstances, and any other appointment might well have caused surprise. The provisions of the will, when tested by the considertaions which would normally operate upon the testator's judgment and inclination, tend so strongly to refute the theory of undue influence, as to neutralize any probative effect which the testimony offered by the caveators might otherwise have had in regard to that issue. In the record of this case we are unable to find any evidence legally sufficient to prove that the will in dispute was the product of an influence which destroyed the testator's free agency. *Longanecker v. Sowers,* 148 Md. 584; *Malone v. Malone,* 148 Md. 200; *Kelley v. Stanton,* 141 Md. 380; *Watson v. Y. W.*

*C. A.,* 137 Md. 355; *White v. Bramble,* 124 Md. 400; *Kennedy v. Kennedy,* 124 Md. 38; *Dudderar v. Dudderar,* 116 Md. 605; *Saxton v. Krumm,* 107 Md. 399; *Kennedy v. Dickey,* 100 Md. 152; *Somers v. McCready,* 96 Md. 437; *Schwanteck v. Berner,* 96 Md. 138.

No reference is made in the brief of the appellants to the action on any of the prayers other than those relating to undue influence, and in none of the rulings on the prayers have we found error.

There are eight exceptions relating to the admissibility of evidence.

The first exception was taken because of the exclusion of the will of Ross N. Bowers, a brother of Frank K. Bowers, the testator, whose will is now under contest. The purpose of the proffer was to show that much of the estate passing under the controverted will was derived from the testator's brother, and to have that fact considered in connection with Mr. Kutzleb's advice that a considerable part of the property be transferred to Mrs. Bowers, as reflecting upon the question as to whether influence was being exerted to divert the estate from its natural course of testamentary disposition. The extent to which the estate of Frank K. Bowers was augmented from that of his brother appears in the record from evidence admitted without objection or contradiction. The ruling upon the first exception, therefore, presents no ground of reversal.

The admission of the testator's prior will, executed in 1921, when he was indisputably competent, is the subject of the second exception. As tending to prove that the contested will was in substantial conformity with the testator's previous and formally expressed purpose, the former will was admissible. *Whisner v. Whisner,* 122 Md. 195.

The occasion of the third exception was the refusal to admit in evidence a carbon copy of the will which Mrs. Bowers is said to have executed. There was undisputed evidence of her agreement to make a will in her husband's favor, and in view of that proof, the admission of the wife's

will appears to have been unnecessary for the purposes of the caveators' theory. Independently of any question as to the informality of the proposed method of proving that will, we find no prejudicial error in its exclusion.

The fourth exception was reserved because an objection to a portion of the testimony of Mr. Owens, in reference to the instructions under which he prepared the will in question, was overruled. The testimony was relevant and the ruling was proper.

By the fifth, sixth and seventh exceptions the caveators complain of rulings which permitted two witnesses to testify that Mr. Bowers, when he signed his last will, was capable of executing a valid deed or contract. These witnesses, Mrs. Baxter and Mrs. Skinner, had known the testator for many years, were members of his household during the last two weeks of his life, observed and conversed with him daily during that period, and stated adequate grounds for their testimony as to his mental capacity. The rulings upon these exceptions were fully supported by decisions of this Court. *Daugherty v. Robinson,* 143 Md. 259; *Whisner v. Whisner, supra; Grill v. O'Dell,* 113 Md. 625; *Berry Will Case,* 93 Md. 560, 580.

The eighth exception was taken to the overruling of an objection to testimony of Mr. Kutzleb that he had derived no financial advantage from the deed of trust to which we have referred. This ruling was correct, in view of the nature and scope of the issue which had been developed.

*Rulings affirmed, and case remanded.*