EDWARD A. DONNELLY et al. v. MARY FRANCES
ALLEN DONNELLY.

[No. 28, October Term, 1928.]

*Decided November 22nd, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Charles F. Harley* and *Edward J. Colgan, Jr.,* with whom were *Edwin Eareckson, Jr., Burdette B. Webster,* and *Karr & Colgan* on the brief, for the appellants.

*Thomas H. Robinson* and *Herbert Levy,* for the appellee.

PARKE, J., delivered the opinion of the Court.

The late Francis X. Donnelly had remained unmarried until June 5th, 1921, when at the age of fifty-nine years he married his second cousin, who was thirty-eight-years old. No child was born of this marriage, and, at the time of his death, his household consisted of his wife and her young niece and nephew, and the servants.

He died in 1926 at the age of sixty-four years and left a will dated April 19th, 1924, devising and bequeathing his entire estate to his wife, who was named his executrix without bond. The wife survived her husband, whose next of kin, a married brother and two married sisters, filed a caveat to the will before letters testamentary had been granted. The widow answered and issues were framed and sent to the Baltimore City Court for trial. These issues were in the usual form and presented six questions: (1) was the pur-

porting will duly executed; (2) were its contents known and understood by the testator; (3) did the testator possess testamentary capacity; (4) was the alleged will procured by undue influence; (5) or by fraud; (6) or was it revoked after execution? The brother and two sisters were the caveators, and the widow was the caveatee. The trial court directed the jury to find for the caveatee on all the issues; and the caveators have brought this appeal on the theory that the third and fourth issues, involving the questions, respectively, of testamentary capacity and undue influence, should have been submitted to the jury and that there were errors in certain rulings on the evidence.

The trial was a protracted one and the evidence offered made a bulky record. It is not only unnecessary but impracticable to set out the testimony; and the court, following precedent, *Longanecker v. Sowers,* 148 Md. 584, 589, will state its conclusions, which are the result of carefully weighing and considering all the proof.

The wife was the natural object of the husband's bounty, and the fact that he gave her all his estate was, under all circumstances of the case, neither unusual nor unreasonable and was not of itself indicative of undue influence. The evidence shows that the will was the free, deliberate and unconstrained act of its maker and that it was executed in pursuance of a fixed purpose to make his wife the sole beneficiary. The testimony on the part of the caveators that bore on this issue was conjectural, speculative, remote, and wholly insufficient to support a finding by the jury "that the will in dispute was the product of an influence which destroyed the testator's free agency." *Bowers v. Kutzleb,* 149 Md. 308, 315.

As was recently said by this court in *Malone v. Malone,* 148 Md. 200, 208; "This court has had this question of undue influence frequently under consideration, and it is useless to repeat the requirements of proof to carry the question to the jury, but mere conjecture or a suspicious circumstance, or even an influence or constraint, if not directly connected with the will in the sense of being its procuring cause, will

not be sufficient. The will of a competent person cannot be nullified on the ground of undue influence without affirmative evidence of sufficient probative force to carry to a mind the reasonable conviction of its existence, and that it induced the action of the testator." *Supra.* See *Kennedy v. Kennedy,* 124 Md. 38; *Birchett v. Smith,* 150 Md. 368, 376-379; *Kelley v. Stanton,* 141 Md. 380, 390, 392; *White v. Bramble,* 124 Md. 395, 400; *Saxton v. Krumm,* 107 Md. 393, 404-405; *Struth v. Decker,* 100 Md. 368; *Kennedy v. Dickey,* 100 Md. 152, 162-164; *Watson v. Y. M. C. A.,* 137 Md. 355; *Bell v. Wolfkill,* 152 Md. 407, 417, 418; *Berry v. Safe Deposit Co.,* 96 Md. 55, 56; *Dudderar v. Dudderar,* 116 Md. 605, 614, 620.

2. It is not disputed that, at the time of the execution of the will in question, its maker was in bad health. The testimony on the part of the caveators tends to show that both before and after the making of the will the decedent was under the care of a physician, whose professional duty caused him to observe the physical and mental condition of his patient. The opinion of such a witness upon the testamentary capacity of the person undergoing treatment at his hands is legally competent proof. *Crockett v. Davis,* 81 Md. 134, 149, 152; *Frush v. Green,* 86 Md. 516; *Jones v. Collins,* 94 Md. 413; *Grill v. O'Dell,* 113 Md. 637; *Lyon v. Townsend,* 124 Md. 163; *Smith v. Shuppner,* 125 Md. 417.

The attending doctor's opinion was that the patient was not mentally competent to make a will at the date of its execution. It is urged that this testimony should be ignored, because his own and the other testimony on the part of the caveators showed his opinion to have been without foundation. This court will not permit the opinion of an expert to carry the issue of testamentary capacity to the jury, when the facts within his knowledge are not obscure and need no interpretation or explanation from a medical expert, or when such facts are not sufficient in the judgment of the court to warrant the jury in finding from them that the testator was incompetent. *Berry v. Safe Deposit Co.,* 96 Md. 60, 61; *Horner v. Buckingham,* 103 Md. 556, 563, 564;.

*Baugher v. Gesell,* 103 Md. 450, 453, 454, 459; *Kelly v. Stanton,* 141 Md. 380, 394, 395.

There is evidence, however, in the pending appeal to take it out of the operation of the cases last cited. The decedent was suffering with a complication of diseases which patently were affecting him seriously in a physical way, and which, if the evidence on the part of the caveators be believed, were coincident with a positive and sequential mental impairment. It was the province of the physician to determine if there were any connection between the patient's physical and his intellectual ailments; and, if so, to gauge the extent of his mental capacity by the nature and degree of his pathological symptoms. The attending doctor during the period from 1919 to 1925 had observed that disease had advanced to that stage where mental incapacity had supervened, and to such a degree that it was manifested in an incoherence in speech, in an inability to carry on a conversation, and in a failure to remember the simplest things and most recent happenings. In addition to these evidences of mental derangement and of their progressive nature, the witness described abnormal conduct which he attributed to the patient's mental state. Under these circumstances, the testimony of an attending physician that the patient was mentally incompetent to make a will on the day of its execution may be disbelieved or be refuted, but it cannot be ignored by the court, whose sole function is to pass upon its legal sufficiency to carry the issue to the jury, which is the only body competent to pass upon the weight and credibility of the testimony. Furthermore, this evidence was supported by the testimony of a phychiatrist who, through the medium of a hypothetical question, expressed the opinion that the decedent was mentally incapable at the time of the signing of the will. *Struth v. Decker,* 100 Md. 368, 370. It is true that, upon precisely the same assumption of facts, another expert, who had made an examination of the testator after the date of his will and who testified for the caveatee, pronounced the testator of sound mind but physically infirm. It is, also, a fact that convincing lay and expert evidence in

rebuttal tended to establish the mental capacity of the testator; but this conflict of testimony raised an issue of fact, with which the court had nothing further to do, except to grant a new trial in the event the verdict of the jury should be rendered against the evidence or its weight. 2 *Poe, Pl. & Pr.*, secs. 336 *et seq.* It is our judgment on the whole record that the issue of testamentary capacity should have been submitted to the jury.

3. The remaining questions arise on the rulings on evidence. For the purpose of discrediting a witness, the caveatee introduced in evidence the record of his conviction in the United States Court of the crime of using the mails to defraud. The witness was jointly indicted with another, and the crime charged was sending through the mail a letter demanding the payment of a large sum of money under penalty of death to the person upon whom the demand was so made. In order to restore the credibility of a witness so attacked, the party may not give evidence that he was not guilty of the crime, since the conviction is conclusive evidence of his guilt, but, although good ground may be assigned and authority found for a different conclusion, the sounder and fairer rule seems to be that the witness may be allowed to explain the circumstances of the offence, if in extenuation of the act and in mitigation of its effect. 2 *Wigmore on Evidence* (2nd Ed.), sec. 1117 (3); *Wharton on Crim. Evidence* (10th Ed.), sec. 596; *Smith v. State,* 64 Md. 25, 27. Compare *Lamoreux v. New York, N. H. & H. Ry. Co.,* 169 Mass. 338, 340.

The trial court should be allowed a large measure of discretion in the enforcement of this rule, which should not be enlarged in practice. The first nine exceptions involve the application of this rule, and we find no prejudicial error. The witness should not have been permitted to testify that he was innocent of the crime for which he was convicted of record; and the other excluded questions would have elicited nothing material in addition to the explanation which the witness had given of the circumstances of his participation in the crime.

The evidence offered under the tenth and eleventh exceptions was neither material nor relevant, and the thirteenth to twentieth exceptions were to the exclusion of certain hypothetical questions asked on cross-examination of an expert psychiatrist and, also, of one of the physicians who attended the testator. The questions put were likely to confuse and mislead the jury by asking of the witness his opinion upon facts testified to by other witnesses, whose testimony was not completely stated, but partially presented, so as to submit for an opinion the part which was particularly favorable to the caveator's side or specially unfavorable to the caveatee. The form of these questions and the bounds within which the cross-examination should be confined are largely matters to be left to the sound discretion of the trial judge. In the instant case, the rulings mentioned were neither erroneous nor prejudicial. 1 *Wigmore on Evidence* (2nd Ed.), p. 682 (b), 684, 685; *Thomas v. Fidelity & Cas. Co.*, 106 Md. 317; *Miller v. Leib*, 109 Md. 422; *Berry Will Case*, 93 Md. 572; *Robinson v. Jones*, 105 Md. 68.

The remaining exceptions from twenty-one to thirty-four relate to rebuttal testimony, which the court excluded. The witness had testified to what had taken place and been said in an interview with the caveatee, and he was offered at the close of the caveatee's testimony to deny the caveatee's version of the conversation. The trial judge excluded this testimony, and he was the best judge whether the witness had not been thoroughly exhausted on his examination in chief or whether anything new had developed which would require further testimony from the witness. We perceive no error on the rejection of this offer of testimony.

The action of the trial court in granting the caveatee's third prayer directing a verdict for the caveatee on the issue of testamentary capacity is the only reversible error found in this record; and because of this ruling a new trial must be awarded.

*Ruling on caveatee's third prayer reversed, and case remanded for a new trial.*